**In the Matter of FEDERAL PRESS COMPANY, Debtor.**

**Bankruptcy No. 85–30932–RKR.**

United States Bankruptcy Court,
N.D. Indiana,
South Bend Division.

Aug. 8, 1989.

See also, Bkrtcy., 104 B.R. 56, 117 B.R. 942.

---

Edward A. Zych, South Bend, Ind., for claimant Donald Baker.

William A. Thorne and James R. Byron, Elkhart, Ind., for debtor.

William Nye, Elkhart, Ind., for Creditors Committee.

Joseph M. Forte, South Bend, Ind., for Centaur Ins. Co.

Kathleen Maicher, Merrillville, Ind., for Columbia Cas. Co.

## ORDER

ROBERT K. RODIBAUGH, Senior Bankruptcy Judge.

On March 16, 1987, the court held a hearing for the purpose of estimating the tort claim of Donald Baker. Mr. Baker is one of many persons who have filed personal injury tort claims against the debtor, Federal Press Company ("Federal Press"). Federal Press previously objected to all of the personal injury claims and applied to have the court estimate the claims for purposes of confirmation of its plan of reorganization. Following the hearing on Mr. Baker's claim, the court took the matter under advisement on December 13, 1988, following the time for submitting briefs.

### Background

Donald Baker was injured on December 5, 1984, while operating a press (manufactured by Federal Press) at the plant of his employer, All–State Stamping, Inc. ("All–State"), in New York. Mr. Baker was 26 years old and earned approximately $360.00 per week at the time of the accident. The day of Mr. Baker's injury was his first day of employment at All–State although Mr. Baker had worked with presses similar to the one involved in his accident for eight years prior to working for All–State. Mr. Baker asserts that on the day of the accident he had been operating the press by use of a foot pedal for about forty-five minutes when a part became stuck in the die area of the press. Mr. Baker contends that when he reached into the die area of the press to retrieve the part, the ram of the press unexpectedly triggered downward crushing the fingers of his right hand.

Mr. Baker alleges that Federal Press is liable for his injuries because Federal Press manufactured the press in such a way as to allow the machine to operate without a guard in place and failed to warn potential operators of the danger of the machine. Mr. Baker bases his claim on theories of strict liability and negligence. He values

his claim at $2,208,481.53 and indicates that this amount includes $2,105,028.00 for physical pain and suffering, emotional trauma, impact on social life, physical impairment, disfigurement and deformity;[1] $42,120.00 for lost earnings of $18,720.00 per year for 2.25 years; $11,333.53 for medical bills; $25,000.00 for future medical bills and lost earnings; and $25,000.00 for prosthesis devices which might be used throughout Mr. Baker's lifetime. In support of his claim Mr. Baker presented to the court his medical records, reports from several doctors, and workers' compensation records. These records indicate that Mr. Baker suffered the amputation of four fingers of his right hand through the proximal metacarpals. Although Mr. Baker has obtained no official impairment rating by a physician, his doctors' reports note that he will require the use of a prosthesis or eventual biologic reconstruction (toe to hand transfer) in order to regain manipulation capacities in the right hand. Mr. Baker still suffers pain in his hand and asserts that he needs continued therapy and rehabilitation to overcome his feelings of depression and hopelessness and to enable him to function on a normal level.

Federal Press argues that it is not responsible for Mr. Baker's injuries and that the court should estimate Mr. Baker's claim at zero. Federal Press asserts that as it placed the press into the stream of commerce in 1942, 42 years before the accident, it should not be held liable for Mr. Baker's injuries. Federal Press further argues that Mr. Baker has failed to submit evidence concerning the existence or nonexistence of warnings on the press or case law imposing upon Federal Press a duty to warn in this situation in order to support his claim that Federal Press breached its duty to warn of the dangers of using the press. Federal Press argues that Mr. Baker has failed to show that Federal Press' actions or inactions were a proximate cause of his injuries and thus asserts that Mr. Baker may not recover on his claim for breach of the duty to warn. Federal Press contends that as the dangers of the press were open and obvious and quite well known to Mr. Baker, the doctrine of strict products liability is inapplicable.

In addition, Federal Press asserts that it should not be held liable for Mr. Baker's injury because it was not responsible for the complete assembly of the press. Federal Press explains that power presses are built as multi-dimensional and multi-purpose machines to be used in an unlimited variety of applications by companies who customize the presses according to the type of product they wish to produce. As new products are invented all the time, the press is a flexible tool which can be modified to fit new applications. Companies add the die, set up a method of feeding raw materials into the machine and of removing parts and scrap pieces, and add appropriate safety features. Federal Press accordingly asserts that the unfinished and modifiable nature of the press itself in effect shifts the responsibility for installing safety devices to employers. Federal Press bolsters its argument by citing OSHA regulations which state that the employer is responsible for the point of operation—where dies are inserted—on mechanical power presses. The federal regulations require the employer to periodically check safety devices on mechanical power presses.

### Discussion and Decision

Title 11 U.S.C. § 502(c) provides:

There shall be estimated for purpose of allowance under this section—

(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case....

11 U.S.C.A. § 502(c) (West Supp.1989). Title 28 U.S.C. § 157 grants the court broad authority to hear and determine all cases under the Bankruptcy Code and all core proceedings arising in a case under the

---

1. Mr. Baker arrives at the $2,105,028.00 figure by assessing a $5.00 per hour value upon the continuing nature of his injury and multiplying the value times the number of expected hours remaining in his life at the time of the accident. Mr. Baker alleges that his life expectancy in 1984 was another 48.06 years.

Code, including those matters which involve:

allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11....

28 U.S.C. § 157(b)(2)(B) (West 1988). Consistent with this provision is N.D. Ind. Local Dist.R. 45(b)(2) (1987), which states that the bankruptcy court is to dispose of all pretrial motions concerning personal injury tort claims and administer the debtor's efforts to reorganize until the personal injury matter is ready for the final pretrial conference. At that time the matter is to be transferred to the district court. Bankr.R. 3018 further provides that "[n]otwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for purposes of accepting or rejecting a plan." Bankr.R. 3018 (West 1988).

■ The court concludes that 28 U.S.C. § 157(b)(2)(B), N.D. Ind. Local R. 45(b)(2) and Bankr.R. 3018 grant it the authority to hear the claim presented herein and to determine the weight to be given the claim for purposes of voting on the debtor's plan of reorganization, and not for the purpose of determining the debtor's ultimate liability for the claim or the amount of the claim for purposes of distribution. The court, therefore, will estimate the value of Donald Baker's claim (if successful) and temporarily allow the claim for purposes of voting to accept or reject the debtor's plan of reorganization.

■ Estimation of a claim within the meaning of §§ 157 and 502(c) "does not require that a bankruptcy judge be clair-

voyant." *In re Baldwin–United Corp.*, 55 B.R. 885, 898 (Bankr.S.D.Ohio 1985). Instead, a court only needs to reasonably estimate the probable value of the claim. *Id.* Such an estimate "necessarily implies no certainty" and "is not a finding or a fixing of an exact amount. It is merely the court's best estimate for the purpose of permitting the case to go forward and thus not unduly delay the matter." *Id.* (quoting *In re Nova Real Estate Investment Trust*, 23 B.R. 62, 66 (Bankr.E.D.Va.1982)). In estimating claims, courts are to use "whatever method is best suited to the particular contingencies at issue." *Id.* at 899 (quoting *Bittner v. Borne Chemical Co., Inc.*, 691 F.2d 134, 135 (3rd Cir.1982)). *See also Brutoco Engineering & Construction Co., Inc. v. Dennis Ponte, Inc. (In re Dennis Ponte, Inc.)*, 61 B.R. 296, 300 (9th Cir. B.A.P.1986).

Options for the court in estimating claims include accepting the claimant's claim at face value, estimating the claim at zero and waiving discharge of the claim under § 1141(d),[2] arriving at its independent estimation of the claim, or utilizing a jury trial to obtain an accurate estimation.[3] In valuing a claim under the Bankruptcy Act "courts were directed to use a 'generous and liberal' standard, yet give due regard ... to the rights of other creditors." *In re Nova Real Estate Investment Trust*, 23 B.R. 62, 66 (Bankr.E.D.Va.1982) (citing *Marin Foods, Inc. v. Hemphy (In re William Rakestraw Co., Inc.)*, 450 F.2d 6, 9 (9th Cir.1971)). The Bankruptcy Code, though, gives no such direction. Courts accordingly have held that "the court is bound by the legal rules which may govern the ultimate value of the claim.... However, there are no other limitations on the court's authority to evaluate the claim save those general principles which should inform all decisions made pursuant to the Code." *In re Lane*, 68 B.R. 609, 612 (Bankr.D.Hawaii 1986) (quoting 691 F.2d at

---

**2.** *See In re Baldwin–United Corp.,* 55 B.R. 885, 901 (Bankr.S.D.Ohio 1985) and n. 17 (discussing the perils of this approach).

**3.** The option of a jury trial is available only "in rare and unusual cases." *Bittner v. Borne Chemical Co., Inc.,* 691 F.2d 134, 135 (3d Cir. 1982) (citing 3 Collier on Bankruptcy ¶ 502.03 (15th ed. 1981)).

135–36) (emphasis omitted).[4] The standard upon review is narrow since § 502(c)(1) evidences Congress' view that "bankruptcy courts are better equipped to evaluate the evidence supporting a particular claim with [sic] the context of a particular bankruptcy proceeding." *Id.* (emphasis omitted).

 In this case the court concludes that determining whether Federal Press ultimately is liable for Donald Baker's claim would unduly delay the court's administration of these proceedings. Such a determination not only would require the court to delve into the law of the state where the incident occurred and to address such issues as whether the pertinent statute of limitations bars Baker's claim, whether Baker may be held to be contributarially negligent or whether the rule of strict liability applies, but also would require the court to address the question of whether federal OSHA guidelines apply to shift liability in this case to Baker's employer. In the interests of administering this case efficiently, establishing a quick but fair way to estimate the various tort claims before it, and allowing the parties to receive a complete and final adjudication of their respective positions at the earliest date possible, the court determines that at this time it will limit its estimate to the probable value of Baker's claim, if successful, given the nature of his injuries.

 Looking to the nature of Mr. Baker's injury, his medical bills as well as the additional expenses and loss of employment which the claimant incurred as a direct result of the injury, the court concludes that a reasonable estimate of the probable value of Mr. Baker's claim is $950,000.00. In making this determination, the court notes that the national average unreduced verdict award for the amputation of multiple fingers with specials (medical/wage loss expenses) ranging from $50,000.00 to $79,999.00 is $983,622.00. *See* 1B Jury

Verdict Research, Inc., Personal Injury Valuation Handbooks, *Table of Verdict Expectancy Values For Finger and Hand Injuries* (1987 and Supp.1988). The court accordingly concludes that $950,000.00 is a fair estimate of the value of Mr. Baker's claim.

### Conclusion

WHEREFORE, the court temporarily values the claim of Donald Baker at $950,-000.00 for purposes of voting to accept or reject Federal Press' plan of reorganization. It is

SO ORDERED.

---

4. In a law review article on the subject, one author suggests that courts could include in their estimation a calculation of the expected jury award should injury occur. Note, *Procedures for Estimating Contingent or Unliquidated Claims in Bankruptcy,* 35 Stan.L.Rev. 153 (1982) (authored by David Kauffman). Kauffman fur-ther notes that "[t]he difficulty of evaluating contingent claims results from both the uncertainty about whether liability attaches and the uncertainty of value even if liability attaches." *Id.* at n. 5 (citing *Maynard v. Elliott,* 283 U.S. 273, 278, 51 S.Ct. 390, 392, 75 L.Ed. 1028 (1931)).