**In re FARLEY, INC., Debtor.**

**Bankruptcy No. 91 B 15610.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Nov. 2, 1992.

Herbert S. Edelman, Howard A. Becker, Kaye Scholer Fierman Hayes & Handler, New York City, Raymond E. Stachnik, Mark K. Thomas, Katten Muchin & Zavis, Chicago, Ill., for debtor.

Thomas Petkus, Petkus & Associates, Abraham Brustein, Christopher R. Smith, Smith Williams & Lodge Chartered, Chicago, Ill., for claimants.

FINDINGS OF FACT AND CONCLUSIONS OF LAW CONCERNING THE ESTIMATION OF PERSONAL INJURY AND CONTRIBUTION CLAIMS FOR PURPOSES OF PLAN VOTING AND FEASIBILITY

JACK B. SCHMETTERER, Bankruptcy Judge.

The Debtor Farley, Inc. ("Farley") objected to claims filed by Messrs. Colakovic, Kostich, Leach, Mirkovic, and Moreno (collectively, the "Injury Claimants") and the claims filed by Barber–Colman Company, Maxon Corporation, NCR Corporation, Olin Corporation, Westronics, Inc., and Vertac Chemical Company (collectively, the "Contribution Claimants"). Claims of the Injury Claimants arise out of an explosion that occurred at a factory in Chicago. They are pursuing tort actions against Farley and several other defendants based on injuries sustained due to the explosion. The Contribution Claimants are co-defendants in that tort case who have cross-claims against Farley. The tort case pends in the Circuit Court of Cook County, Illinois. As of this date, no trial date has been set.

Hearing as to whether Farley's proposed Plan will be confirmed is scheduled within a few weeks. To allow Farley to proceed to confirmation hearing, a hearing was set for purposes of estimating these injury and contribution claims for purposes of voting and determining plan feasibility pursuant to 11 U.S.C. § 502(c). That hearing was initially held on August 31 and September 1, 1992, at which time Farley and the Injury Claimants presented extensive exhibits and testimony. Subsequently, Farley, the Injury Claimants, and the Contribution Claimants entered into further stipulations and no further evidence was offered. All parties are found to have rested. The record is sufficient to allow estimation of the collective size of the Injury Claimants' and Contribution Claimants' claims. Accordingly, the Court now makes and enters the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. On April 26, 1985, an explosion occurred at the Tool & Engineering Company's ("T & E") manufacturing plant located at 900 West 18th Street in Chicago, Illinois.

2. The Injury Claimants were then all members of the United Steelworkers of America, Local 758. Messrs. Colakovic and Mirkovic were screw machine operators at the T & E factory under the immediate supervision and control of Mr. Kostich. The other Injury Claimants were similarly employed in the manufacture of T & E's products. All of the Injury Claimants were either killed or injured in the explosion on April 26.

3. T & E has never been a distinct and separate corporate entity. Thus, it did not comprise the entity that was the Injury Claimants' employer at the time of the explosion. The ultimate factual and legal issue presented at the hearing was whether the Injury Claimants were employed by Farley Industries, Inc. ("Industries") or Farley Metals, Inc. ("Metals") at the time of the explosion.

4. Metals is a Delaware corporation formed on September 8, 1982. Metals subsequently acquired a Federal Employer Identification Number (36–3195483) for payroll tax purposes. On December 28, 1987, Metals amended its Articles of Incor-

poration to change its name to Farley, Inc., the Debtor–in–Possession in this case. Farley Ex. 38.

5. Industries is an Illinois Corporation formed on January 2, 1985. Industries also acquired a Federal Employer Identification Number (36–3334983) for payroll tax purposes.

6. Prior to September 10, 1982, T & E was an operating division of NL Industries, Inc. On that date, Metals entered into an agreement with NL Industries to acquire T & E. The agreement consisted of an acquisition agreement, an assignment of T & E assets, an assumption of T & E liabilities, and warranty deeds conveying all T & E real property to Metals. See Farley's Exs. 2 to 5.

7. When Industries was formed, it entered into an oral management agreement with Metals whereby Industries provided management services to Metals in 1985 for a $7.8 million fee.

8. Various documents admitted into evidence list T & E as a division of Metals. These documents include Metal's 1985 annual report, Farley Ex. 36, Farley's Form 10–K filed with the Securities and Exchange Commission for 1987, Farley Ex. 39, Employer's Quarterly Report of Employees' Wages, Farley Exs. 8 to 10, and W–2 Forms sent to the Injury Claimants, Farley Exs. 11 to 23. Industries' Federal Employer Identification Number never appeared on any of the claimants' W–2's.

9. The Injury Claimants have, however, produced several documents that call T & E a division of Industries. These documents include the union contract between T & E and the United Steelworkers of America, Claimants' Ex. 2, and the employer's first report of injury or illness to the Illinois Industrial Commission after the explosion occurred, Claimants' Ex. 6a. There are also several documents which indicate that the insurer who paid the workers' compensation awards to the Injury Claimants listed Industries as the insured employer. See, e.g., Claimants' Ex. 9a (a letter from Travelers Insurance Co. to the wife of Mr. Colakovic concerning the payment of certain death benefits).

10. There are also several letters written on company stationery which has printed on it, "Tool & Engineering Company/division of Farley Industries, Inc." T & E's president maintained that T & E was, in fact, a division of Metals. He offered an explanation for the stationery, stating that a change from NL Industries to Farley Industries was less drastic and less likely to confuse customers than a change from NL Industries to Farley Metals. Therefore, he testified that he ordered the stationery to list T & E as a division of Industries rather than Metals.

11. The weight of evidence tends to show that the Injury Claimants' had an employee-employer relationship with Metals. They were all employees of T & E, and it is clear that T & E was owned by Metals. The claimants' payroll was paid by Metals, and taxes were withheld and paid by Metals. Also, the managers of T & E had the authority as employees of Metals to hire, promote, discipline, fire, and direct the work of all employees of T & E manufacturing facility (albeit subject to the conditions of the union contract).

12. An employment relationship between the Injury Claimants and Industries could well be found based on the union contract which named "Farley Industries, Inc." as the worker's employer. However, if Industries had an employment relationship with the Injury Claimants, then the evidence tends to show that Metals was likely a joint-employer. Metals and Industries had an identical set of officers. See Farley Ex. 36. Agents of Industries could also be found to be agents of Metals. Since Metals owned the explosion site and everything in it, and paid the wages and taxes of T & E's employees, the relationship between Industries and Metals became blurred when it came to supervising employees. It is apparent, however, that any employee of Industries who disciplined a factory worker in his capacity as an agent of the management was likely also an employee of Metals who could have disciplined that worker as an agent of the owner. Therefore, a finding of joint-employer status could be warranted from the evidence if

Industries was found to have an employment relationship with the Injury Claimants.

13. After the explosion, the claimants filed claims for workers' compensation and subsequently received awards from T & E's workers' compensation insurance provider. Metals paid for this workers' compensation insurance policy. The provider was Travelers Insurance Company, and the policy lists Metals as the insured employer. Farley Ex. 45. However, several letters to the claimants list Industries as the insured.

14. After the explosion, the Injury Claimants filed lawsuits in the Circuit Court of Cook County, Illinois, which were subsequently consolidated into one case (*Mareno, et al. v. Armil, CFS, Inc., et al.*, 85 L 28175). Farley is named as one of several co-defendants. The Contribution Claimants are some of those co-defendants. Prior to filing of this bankruptcy, Farley moved for summary judgment in the consolidated state court case on grounds that it employed the Injury Claimants. That motion was denied by an order entered August 27, 1990. Claimants' Ex. 24.

15. A key part of the dispute here between Farley and the Injury Claimants turns on the question of who owned T & E on April 26, 1985. Whatever entity owned the factory then was the Injury Claimants' employer. Farley has produced documents which show the chain of T & E's ownership which passed from NL Industries to Metals in 1982. They have further produced documents and testimony which show that Metals' funds were used to pay salaries, benefits, and workers' compensation insurance for the employees at T & E. The Injury Claimants have used selected documents in an attempt to prove that T & E is actually owned by Industries. The evidence produced by Farley should be accorded greater weight than the evidence produced by the claimants, because Farley's evidence goes to the substance of the employment relationship while the claimants's evidence is explainable for other reasons (e.g., mistake, avoidance of confusion, etc.).

16. The preponderance of the evidence clearly indicates that Metals was either the employer or at least a joint-employer of the Injury Claimants. However, this decision was reached by evaluating the evidence. Since this Court may not decide the issue of employment, that issue will go to a state court jury as claimants have a right to the jury trial demanded by them. The jury may decide to weigh the evidence differently. However, given the heavy weight of evidence favoring a ruling for debtor on the employment issue, the Court estimates that claimants have only about a one-in-four chance of winning on this issue at trial in state court.

17. The parties have stipulated that, in the event Farley is found liable to the Injury Claimants in their tort action, the aggregate amount of damages suffered by the Injury and Contribution Claimants could be estimated at $5 million. This stipulated number is not broken down to apportion damages among the individual claimants, or between the Injury and Contribution Claimants.

18. Additional facts contained in the Conclusions of Law will stand as Findings of Fact.

## CONCLUSIONS OF LAW

1. This matter is before the Court pursuant to 28 U.S.C. § 157, and is referred to here under Local District Court Rule 2.33. Subject matter jurisdiction lies under 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

2. The Parties have extensively argued the question of jurisdiction in memoranda submitted pre-trial. Debtor argues that this Court can finally determine the employment issues, should do so in its favor, and therefore should estimate at zero. Farley thereby seeks judgment that will collaterally estop the state court claims against it. However, this Court has no authority to determine finally a personal injury claim. *UNR Industries, Inc. v. Continental Ins. Co.*, 101 B.R. 524 (N.D.Ill.1989); *In re Federal Press Co.*, 116 B.R. 650 (Bankr.N.D.Ind.1989). Nor does this Court have authority to conduct the requested jury trial. *In re Grabill*

*Corp.,* 967 F.2d 1152 (7th Cir.1992). This is but a limited estimation proceeding. Section 157(b)(2)(B) provides that core proceedings include,

> ... estimation of claims ... for purposes of confirming a plan under chapter 11 ... of this title but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11.

In the instant proceeding, the Court is not liquidating the personal injury claims, nor is it estimating such claims for purposes of distribution. The estimation procedure was held merely to allow Farley to proceed to confirmation with an estimate of the size of the claims involved here for purposes of voting and determining plan feasibility. This limited purpose is well within the purview of § 157(b)(2)(B). The final determination sought by debtor is not.

■ 3. The parties also argued whether this estimation hearing will have any collateral estoppel effect. Such argument cannot be resolved by this Court, as the collateral estoppel effect of a prior proceeding is an issue that only the judge in the later forum can decide. *See Pettibone Corp. v. Easley,* 935 F.2d 120, 123 (7th Cir.1991), and cases cited, ("Disputes about the effect of a decision in one case on the prosecution of another are for the judge presiding in the second case. In the law of preclusion the second court normally determines the effect of the first judge's order.").

### Procedural Standards for Claims Estimation

4. Farley maintains that the estimation of the Injury Claims for purposes of voting and determining plan feasibility is necessary for the confirmation process to proceed, and no party has disputed this. Therefore, an estimation proceeding pursuant to 11 U.S.C. § 502(c) was an appropriate procedure here. *See, e.g., In re Mac-Donald,* 128 B.R. 161 (Bankr.W.D.Tex. 1991), and *In re Federal. Press Co.,* 116 B.R. 650 (estimating personal injury claims).

■ 5. Section 502(c) provides in relevant part,

> There shall be estimated for purpose of allowance under this section—
>
> (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case....

In estimating claims pursuant to this provision, courts should use "whatever method is best suited to the circumstances." *Matter of Brints Cotton Marketing, Inc.,* 737 F.2d 1338, 1341 (5th Cir.1984). *See also Bittner v. Borne Chemical Company, Inc.,* 691 F.2d 134 (3d Cir.1982). In determining the claims' value, the Court "is bound by the legal rules which may govern the ultimate value of the claim." *Brints Cotton Marketing,* 737 F.2d at 1341; *Bittner,* 691 F.2d at 135. Therefore, to estimate the Injury Claimants' unliquidated tort claims, the Court must apply the relevant laws of Illinois to the issues presented in their claims.

■ 6. Farley argues that, if the preponderance of the evidence weighs in their favor, then the Court should estimate the value of the claims at zero. It would not be an abuse of the Court's discretion under § 502(c) to take this approach. *See Bittner,* 691 F.2d at 136 (affirming a bankruptcy court's decision to value a claim at zero). However, such a valuation method is not appropriate in the circumstances presented here. The Illinois Circuit Court has denied an earlier summary judgment motion filed by Farley, based on the same employment issue that it raised here. Barring settlement, the tort case will be going to trial before a state court jury. Therefore, the subject claims cannot and do not have a zero value in any legal or practice sense. Their more realistic value consists of the amount stipulated as damages in event Farley is found liable, discounted by the chance that Farley will not be found liable.

■ 7. Courts may determine values based on probabilities when estimating claims under § 502(c). *See Federal Press,* 116 B.R. at 653 ("a court only needs to reasonably estimate the probable value of

the claim"). The Court has broad discretion to determine the best valuation method for the circumstances. *In re Corey,* 892 F.2d 829, 834 (9th Cir.1989). As discussed, the most realistic valuation of the personal injury claims here involves applying probabilities. Therefore, the claims will be estimated by taking the stipulated figure for damages and then discounting that figure by the high probability that Farley will not be found liable in tort under Illinois law.

### Application of Illinois Law

8. Section 5(a) of the Illinois Workers' Compensation Act provides in relevant part,

> No Common law or statutory right to recover damages from the employer ... for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, or any one otherwise entitled to recover damages for such injury.

Ill.Rev.Stat. Ch. 48, ¶ 138.5(a). Thus, common law or statutory actions by employees against their employers to recover damages for injuries sustained within the scope of their employment are barred. 37 *Ill. Law & Prac.,* Workers' Compensation § 21 (1987).

9. The bar in the Workers' Compensation Act to statutory or tort recovery applies whether the employee is employed by one employer or two joint-employers. *Freemen v. Augustine's Inc.,* 46 Ill.App.3d 230, 233, 4 Ill.Dec. 870, 872, 360 N.E.2d 1245, 1247 (1977) ("More than one employer may be liable for the same injury under the [Workers' Compensation] Act and, therefore, immune from common law liability"), *citing American Stevedores Co. v. Industrial Comm.,* 408 Ill. 445, 97 N.E.2d 329 (1951).

10. Since the Injury Claimants have filed claims for and recovered damages pursuant to the Workers' Compensation Act, the question is whether they are entitled to recover from Farley under a tort or wrongful death theory. No one disputes that the Injury Claimants' injuries were sustained or death suffered while they were engaged in the line of their duties at the T & E factory. The only dispute is whether they were employed by Metals at the time of the explosion. If Metals had no employment relationship with the Injury Claimants, then their tort actions are not barred by the Workers' Compensation Act. *See Fregeau v. Gillespie,* 96 Ill.2d 479, 483, 71 Ill.Dec. 716, 718, 451 N.E.2d 870, 872 (1983), and *Collier v. Wagner Castings Co.,* 81 Ill.2d 229, 237, 41 Ill.Dec. 776, 780, 408 N.E.2d 198, 202 (1980) (listing the elements that plaintiffs must prove to escape the exclusivity provision of § 5(a) of the Workers' Compensation Act).

11. To determine whether an employment relationship exists, the Court must examine several factors. The Illinois Supreme Court has noted,

> No single facet of the relationship between the parties is determinative, but many factors, such as the right to control the manner in which the work is done, the method of payment, the right to discharge, the skill required in the work to be done, and the furnishing of tools, material or equipment have evidentiary value and must be considered ... Of these factors, the right to control the work is perhaps the most important single factor.... (citations omitted)

*Clark v. Industrial Comm.,* 54 Ill.2d 311, 314–15, 297 N.E.2d 154, 156 (1973). *See also Dildine v. Hunt Transportation, Inc.,* 196 Ill.App.3d 392, 394, 143 Ill.Dec. 94, 96, 553 N.E.2d 801, 803 (1990) (setting out the same factors).

12. In the instant case, the weight of the evidence tends to warrant findings:

> (1) that Metals had the right to control the manner in which the Injury Claimants did their work on the factory floor;
>
> (2) that Metals paid the wages, benefits, and workers' compensation insurance for the Injury Claimants;
>
> (3) that Metals had the right (subject to conditions set out in the union contract) to discharge the Injury Claimants; and

(4) that Metals owned all the tools and equipment in the T & E factory and thus furnished the Injury Claimants with the tools and equipment necessary to do their work.

Therefore, the Court estimates that a jury is very likely to find that Metals (now named Farley, Inc.), and not Industries, was the Injury Claimants' employer.

■ 13. A joint-employment relationship exists where the right of control the employee is shared by two employers and both benefit from the work. *American Stevedores Co.*, 408 Ill. at 447, 97 N.E.2d at 330; *Freeman*, 46 Ill.App.3d at 233, 4 Ill. Dec. at 872, 360 N.E.2d at 1247.

14. A jury could find that Industries had a right of control over the Injury Claimants' work based on the union contract and several letters written to the employees, and thus find that the claimants had an employment relationship with Industries. However, in this situation, the evidence would still warrant a possible finding that Metals retained control over the T & E employees in its capacity as T & E's owner and the payor of the employees' wages and benefits. Therefore, a finding of joint-employment could follow.

15. In *Dildine v. Hunt Transportation, Inc.*, 196 Ill.App.3d 392, 143 Ill.Dec. 94, 553 N.E.2d 801, an explosion occurred in a garage owned by defendant, and occupied by both defendant and a cab company. Plaintiff was in the garage working on a car owned by the cab company and was injured in the explosion. Both defendant and the cab company were wholly owned subsidiaries of a third corporation, and defendant carried workers' compensation insurance that named the cab company as an insured. While plaintiff was primarily employed to repair the cab company's cars, the managers of defendant had authority to control plaintiff's work. The trial court dismissed plaintiff's tort action against defendant, finding that defendant and the cab company were joint-employers of plaintiff. Plaintiff appealed based on the evidence that his wages were paid by the cab company. The appellate court rejected this argument and affirmed the judgment because

defendant had a right of control over plaintiff. *Dildine*, 196 Ill.App.3d at 394–95, 143 Ill.Dec. at 96–97, 553 N.E.2d at 803–04.

16. This case is strikingly similar to *Dildine*. Indeed, a finding that Metals was a joint-employer would be even more supported by the evidence here because Metals paid the claimants' wages and benefits while the defendant in *Dildine* did not.

17. However, this Court's view as to Metals' status as employer is only an estimation, i.e. a "tentative opinion". *See* W. Morris, ed., *The American Heritage Dictionary of the English Language* 449 (New College Ed.1981) (defining "estimate"). A jury could possibly weigh the evidence differently to reach a different decision. If so, it would not be the first time that skills of counsel sold a difficult case. However, even then the claimants would face risk of loss on appeal.

### Claimants' Equitable Estoppel Theory

■ 18. The Injury Claimants argue that, even if the Court does not find that evidence warrants finding that Industries was their employer, Farley should be equitably estopped from denying the existence of this relationship. "Estoppel requires words or conduct which either misrepresent or conceal material facts with the intent or expectation it will be relied upon.... Fraudulent intent is not necessary; it is sufficient if an injustice results." *Kievman v. Edward Hospital*, 135 Ill. App.3d 442, 446, 90 Ill.Dec. 109, 112, 481 N.E.2d 909, 912 (1985).

19. In the instant case, there is no clear evidence that Metals acted in such a way as to conceal their ownership of T & E from the Injury Claimants. However, even assuming a concealment, the doctrine of estoppel has no application here because no injustice has resulted from the alleged "misrepresentation". The Injury Claimants had a statutory right to receive workers' compensation, and it is undisputed that they received such compensation. Finally, there was no evidence of any reliance by the Injury Claimants on Metal's alleged act of holding out Industries to be their employer. It is undisputed that everyone con-

sidered the Injury Claimants to be employed by T & E, and, until the explosion, it was immaterial to the claimants who owned T & E.

20. No Illinois precedents have been found to have applied the doctrine of estoppel to a similar scenario. The Injury Claimants cite *Kievman* to support their argument. The defendant in *Kievman* was a municipal corporation. As such, it was protected by an Illinois law requiring that people who wish to sue it for tort damages must serve notice upon it of their intent to bring suit. *See* Ill.Rev.Stat. Ch. 85, ¶ 8–102. However, none of defendant's stationery or billing indicated its status as a municipal corporation. Plaintiff sued that defendant in tort for damages, and the trial court dismissed the suit for failure to comply with ¶ 8–102. The Appellate Court reversed the dismissal, finding that defendant was estopped from asserting the ¶ 8–102 defense. That court reasoned that ¶ 8–102 existed to give municipal corporations a chance to work out their disputes with prospective plaintiffs before litigation started, and that the hospital's concealment of its status ran counter to the purpose of the statute. *Kievman*, 135 Ill.App.3d at 446–47, 90 Ill.Dec. at 112–13, 481 N.E.2d at 912–913. In this case, Metals' alleged concealment has neither prejudiced the Injury Claimants nor frustrated the goals of the Workers' Compensation Act. Thus, *Kievman* is distinguishable. The equitable estoppel argument has no weight.

### Contribution Claims

■ 21. The contribution claims against Farley are based on potential liability of the Contribution Claimants to the Injury Claimants in the Illinois Circuit Court case. Farley has argued that these claimants must be given the same treatment as the Injury Claimants. They argue that, if the Injury Claimants are barred from recovering damages in tort by the Workers' Compensation Act, then the Contribution Claimants must be similarly barred. They cite *Kotecki v. Cyclops Welding Corp.*, 146 Ill.2d 155, 166 Ill.Dec. 1, 585 N.E.2d 1023 (1991), for support. The Contribution Claimants have not responded to this argument, nor have they offered any evidence or filed any brief. In *Kotecki*, the Illinois Supreme Court held,

The language of the Workers' Compensation Act clearly shows an intent that the employer only be required to pay an employee the statutory benefits. These limited benefits are paid in exchange for a no-fault system of recovery.... [t]he defendant/third party plaintiff, Cyclops [a contribution claimant], [is entitled] to seek contribution in an amount not greater than the workers' compensation liability of the third-party defendant, Carus [the employer].

(citations omitted) 166 Ill.Dec. at 6, 585 N.E.2d at 1028. No cases were found to support a contrary position. Thus, Farley is correct in asserting that the contribution claims must be limited to the same extent as the personal injury claims.

### CONCLUSION

■ Accordingly, by separate order entered this date, the Injury Claimants and Contribution Claimants are estimated to have a total aggregate claim of $1.25 million for purpose of voting. This number consists of the $5 million stipulated figure for damages discounted by the Court's estimation that the claimants have a one-in-four chance of prevailing on the employment issue at trial. The Contribution Claimants are treated likewise, and their claimants are limited to Farley's estimated liability to the Injury Claimants. However, it must be emphasized that this estimate lumps all these claims into one estimated aggregate number. The parties have supplied no basis as of yet for apportioning the estimated aggregate claim total between the several defendants. That lack was pointed out to counsel, who have assured the Court that a further stipulation will apportion the estimated aggregate number for purposes of counting the votes of the several claimants at the confirmation hearing.