UNITED REPUBLIC INSURANCE COMPANY, in Receivership, Plaintiff,

v.

CHASE MANHATTAN BANK; Fleet Bank; Fleet National Bank; Shawmut Bank Connecticut, c/k/a Fleet National Bank, as Indentured Trustee of the Trust Indenture and Security Agreement; Lincoln Bank; Chase Lincoln Bank; Shawmut Bank Connecticut, National Association, as Trustee of the Trust Indenture and Security Agreement; Bank of New York, as Trustee of Alpha Trust; Alpha Trust; and the Bank of New York, Defendants.

No. 100–CV–76.

United States District Court, N.D. New York.

Aug. 21, 2001.

Ainsworth, Sullivan, Tracy, Knauf, Warner & Ruslander, PC, John W. Bailey, Rebecca A. Slezak, of counsel, Albany, NY, for plaintiff.

Nixon Peabody, LLP, Carolyn G. Nussbaum, Steven S. Miller, of counsel, Rochester, NY, for defendants Chase Manhattan Bank, Fleet Bank, Fleet National Bank, Shawmut Bank Connecticut c/k/a Fleet National Bank, Lincoln Bank, and Chase Lincoln Bank ("Lender Banks").

Buchanan, Ingersoll, William M. O'Connor, for counsel, New York City, for defendants Shawmut Bank Connecticut, National Association, as Trustee of the Trust Indenture and Security Agreement, ("Indenture Trustee"), Alpha Trust.

King & Spalding, Jennifer L. Hurley, Jeffrey Q. Smith, of counsel, New York City, for defendant Bank of New York.

## MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

### I. INTRODUCTION

Plaintiff, United Republic Insurance Company (hereinafter "URIC" or "plaintiff"), seeks damages as a result of the failed repayment of its loan to the defendant Alpha Trust, which was created by URIC's majority shareholder, Albert Lawrence, to repay debts for another of his companies. In its amended complaint, URIC alleges six claims: (1) breach of fiduciary duty; (2) fraud; (3) constructive fraud; (4) negligence; (5) fraudulent conveyance under New York's debtor/creditor law; and (6) conversion. URIC argues that the defendants had constructive and/or actual knowledge that the collateral for URIC's loan to the Alpha Trust was worthless, yet failed to inform URIC of this fact, and instead, supported the creation of the Alpha Trust. URIC seeks to recover $14,000,000.00, the amount of its loan to the Alpha Trust.

Defendants, Chase Manhattan Bank, Fleet Bank, Fleet National Bank, Lincoln

Bank, and Chase Lincoln Bank (collectively "the Lender Banks"); Shawmut Bank Connecticut, c/k/a Fleet National Bank, as Indentured Trustee of the Trust Indenture and Security Agreement, and Shawmut Bank Connecticut, National Association, as Trustee of the Trust Indenture and Security Agreement (collectively "Indenture Trustee"); and Bank of New York, as Trustee of Alpha Trust, Alpha Trust, and The Bank of New York, (collectively "Bank of New York") move to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6), contending that (1) URIC lacks standing to bring suit; (2) the claims are barred by the applicable statute of limitations; and (3) none of the claims are legally viable.

URIC opposes the motion and cross-moves to amend its amended complaint to include two additional claims based on: (1) money had and received and (2) the Racketeer Influenced and Corrupt Organizations Act (hereinafter "RICO"), 18 U.S.C. § 1962(a)-(d). The proposed second amended complaint is identical to the amended complaint, except that it adds these two claims.

Oral argument was heard on June 8, 2001 in Utica, New York. Decision was reserved.

## II. FACTS

The essential facts pled by URIC, which must be taken as true, are as follows. URIC, which is currently in receivership, is a Texas corporation that sold policies of insurance to consumers in Texas and was at all relevant times 93.2% owned by Albert Lawrence. Defendants are New York corporations doing business in New York and are combined into the three groups: (1) the Lender Banks; (2) the Indenture Trustee; and (3) the Bank of New York.

Lawrence Group, Inc. ("LGI") had loans of $27,000,000.00 from the Lender Banks that were due on December 31, 1993. The Alpha Trust was created on January 14, 1994. URIC loaned $14,000,000.00 and United Community Insurance Co. ("UCIC," an Albert Lawrence subsidiary) loaned $13,000,000.00 to the Alpha Trust.[1] URIC alleges that the Alpha Trust was essentially a pass through entity to avoid reporting to the Superintendents of Insurance of New York and Texas a transfer of funds from URIC and UCIC to LGI. The amounts of these new loans represented more than five percent of the respective companies' admitted assets, and as such, required reporting if paid directly to LGI. Likewise, because under New York and Texas insurance regulations URIC and UCIC could not provide the collateral to secure these new loans, the collateral was placed in a second trust, pursuant to the Indenture Trust and Security Agreement. This was known as the Indenture Trust, which was also created on January 14, 1994. Under this Agreement, URIC and UCIC were beneficiaries, and defendant Shawmut Bank was the Indenture Trustee.

The $27,000,000.00 was then loaned to LGI by the Alpha Trust. The loan was secured by similar collateral to the collateral which the Lender Banks accepted as security for the original loans.[2] Hence, all

---

1. Albert Lawrence wholly owned LGI, which owned 93.2% of Lawrence Insurance Group, Inc. ("LIG"). LIG wholly owned UCIC. LIG and UCIC together owned URIC. Moreover, Albert Lawrence was a director of LIG, UCIC, and URIC. Albert Lawrence therefore controlled LGI, LIG, UCIC and URIC.

2. While the plaintiff's pleadings about the collateral securing the three loans (that of the Lender Banks to LGI, that of URIC and UCIC to the Alpha Trust, and that of the Alpha Trust to LGI) is somewhat unclear, plaintiffs seem to say that the collateral for all three loans is very similar. Specifically, the plaintiff states

three loans were secured by property of Albert Lawrence and his corporations or subsidiaries. In sum, URIC loaned $14,000,000.00 to the Alpha Trust, which then loaned the funds to LGI, which used the funds to pay off the previous loans owing to the Lender Banks. LGI was then to repay the Alpha Trust loan, and the Alpha Trust was to repay URIC. The Indenture Trust held the collateral securing the loans from URIC to the Alpha Trust in the event of a default by the Alpha Trust or LGI.

As noted above, the Alpha Trust and the Indenture Trust were both created on January 14, 1994. Copies of both Agreements were sent to the New York State Insurance Department on January 21, 1994, which then sent a letter on January 28, 1994 to Albert Lawrence's attorneys stating that the Alpha Trust was illegal and the funds had to be returned to URIC and UCIC immediately. URIC was placed un-der confidential supervision by the Texas Commissioner of Insurance on June 22, 1994.

LGI made payments to the Alpha Trust until October 1, 1996. The Alpha Trust repaid URIC until October 15, 1996. The default on these loans led to the liquidation of URIC and UCIC.[3]

The attached diagram (Exhibit 1) demonstrates the relationship between the parties and this lawsuit.

Plaintiffs filed this action on January 13, 2000. Defendants were granted several extensions of time to file motions or answer. The instant motions were filed on May 14, 2001.

## III. DISCUSSION

### A. Defendants' Motion to Dismiss

#### 1. Standard

A claim that would entitle a plaintiff to relief will not be dismissed unless it ap-

---

that the collateral for the Lender Banks' original loan to LGI was "(i) a personal and unconditional guarantee of [Albert] Lawrence, (ii) an assignment of all issued and outstanding shares of A.W. Lawrence & Co., Inc and LAC, [two companies owned and operated by Albert Lawrence], and (iii) an assignment by LAC of 33,373.5 shares of Class A Common Stock of Adapt, Inc., a wholly owned subsidiary of LAC." (Am.Compl.¶ 57). The plaintiff notes that the collateral used to secure URIC and UCIC's loans to the Alpha Trust consisted of "(i) the LGI notes for $27,000,000.00 made payable to the Alpha Trust, (ii) a personal guarantee from [Albert] Lawrence in the sum of $10,200,000.00, and (iii) 137 shares of LAC stock, 67 shares of which were to satisfy UCIC's loan and 70 shares of which were to satisfy URIC's loan." Id. ¶ 92. The complaint further states that the $27,000,000.00 loan to LGI by the Alpha Trust "was secured by the same property which the Lender Banks had accepted as security for the loans they originally made to LGI and its subsidiaries, affiliates or controlled companies." Id. ¶ 98. In addition the complaint avers, "[t]he Trustee of the Indenture Trust and Security Agreement was scheduled to receive the collateral securing the loans from UCIC and URIC to the Alpha Trust in the event of a default by the Alpha Trust or LGI", id. ¶ 95, and that this collateral "was strikingly similar to the property which was securing the original loans from Lender Banks." Id. ¶ 96. Plaintiff also alleges that "[t]he Alpha Trust and Indenture Trust and Security Agreement stated that in the event of a default of the loan obligation from LGI to the Alpha Trust, the Indenture Trustee would be able to collect the 137 shares of LAC stock and the $10.2 millions guarantee of Lawrence." Id. ¶ 116.

3. Albert Lawrence was indicted on July 1, 1999 for fraud and embezzlement relating to the Alpha Trust transaction. He was the only defendant named in the action and was convicted on all charges on June 8, 2000. See United States v. Lawrence, 99–CR–00326 (N.D.N.Y.2000)(Scullin, C.J.)(Docket No. 100). On March 1, 2001 he was sentenced to a term of thirty-seven months in prison and three years supervised release. Id. at Docket No. 130. He was also ordered to pay restitution in the amount of $37,687,535.00 and a $2,000.00 assessment. Id. The restitution amount includes $14,000,000.00 to URIC. Id.

pears beyond a reasonable doubt that the plaintiff will not be able to prove any set of facts to support the claim. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When considering a motion to dismiss, the court must assume all of the allegations put forth in the complaint are true. *Id.* The issue for the court during the pleading stage is not if the plaintiff will ultimately prevail, but rather, if the claimant is entitled to present evidence to support its claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). When a party makes a motion to dismiss prior to discovery or the filing of an answer the court is loath to dismiss the complaint, unless the defendant can show that the plaintiff is unable to prove facts to support claims that would entitle the plaintiff to relief. *Wade v. Johnson Controls, Inc.*, 693 F.2d 19, 22 (2d Cir.1982); *see also Egelston v. State Univ. Coll. at Geneseo*, 535 F.2d 752, 754 (2d Cir.1976).

### 2. *Standing*

■ "[A] receiver for an insolvent insurance corporation ... has a right to maintain a suit which is necessary to preserve the corporation's assets and to recover assets of which the corporation has been wrongfully deprived through fraud." *Cotten v. Republic Nat'l Bank of Dallas*, 395 S.W.2d 930, 941 (Tex.App.1965); *see also* 66 Am.Jur.2d *Receivers* § 448 (1973)(stating "the receivership does not impair [the corporation's] capacity to sue"). The receiver of an insurer shall "deal with the same in the person's own name as receiver or in the name of the insurer as the court may direct." Tex. Ins.Code Ann. art. 21.28(2)(a) (Vernon 1996). "The said receiver ... shall be vested by operation of law with the title to all of the ... rights

of action of such insurer." *Id.* art. 21.28(2)(b). The complaint's caption identifies URIC as in receivership and the receiver has authorized this suit to recover assets that URIC has allegedly lost through fraud. Hence, the standing requirements are satisfied.

### 3. *Statute of Limitations*

### a. *Claims One, Two, Three, Five, and Six*

The defendants argue that all causes of action are time-barred pursuant to the New York borrowing statute. N.Y. C.P.L.R. § 202 (McKinney 1990).[4] Assuming that Texas law applies, with regard to claims one, two, three, five, and six, the statute of limitations is different for each claim and there exists genuine issues of material fact as to when the limitations period begins to accrue under the applicable Texas limitations periods, some of which are not settled conclusively under Texas law. The question is further complicated by the possible tolling of such statutes under the imputed knowledge and adverse domination doctrines. *See F.D.I.C. v. Shrader & York*, 991 F.2d 216 (5th Cir.1993); *Askanase v. Fatjo*, 828 F.Supp. 465 (S.D.Tex.1993). Under current Texas law, it is unclear if either doctrine is applicable in this case. *F.D.I.C.*, 991 F.2d at 216; *Askanase*, 828 F.Supp. at 465. For these reasons, the breach of fiduciary duty, fraud, constructive fraud, fraudulent conveyance, and conversion claims will not be decided on statute of limitations grounds.

### b. *Claim Four: Negligence*

■ The negligence claim, URIC's fourth cause of action, must be dismissed because it is untimely under both Texas

---

4. The New York borrowing statute provides that, except in extraordinary circumstances, the law of the state where the harm occurs is controlling.

and New York law. Pursuant to New York law, the statute of limitations for a negligence claim is three years. C.P.L.R. § 214. The Texas limitations period is two years. Tex. Civ. Prac. & Rem.Code Ann. § 16.003 (Vernon 1996). A negligence claim accrues when the defendant breaches the duty of care, even if the plaintiff is not immediately aware of the resultant harm. *Fleet Factors Corp. v. Werblin,* 114 A.D.2d 996, 997, 495 N.Y.S.2d 434 (2d Dep't 1985); *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 514–15 (Tex.1998). URIC alleges that the defendants breached their duties as lending trust and fiduciary institutions by "failing to monitor loans they had made." (Am.Compl.¶ 183.) The latest date the alleged breach could be construed to have occurred is October 15, 1996, when the Alpha Trust failed to repay URIC's loan. Yet, it is more logical to conclude that the alleged breach occurred on January 14, 1994, when the Alpha Trust was created. Regardless, URIC did not file its original complaint until January 13, 2000, which is more than three years after the date the Alpha Trust defaulted on its payments to URIC. Thus, the negligence claim must be dismissed.

#### 4. *Merits of Remaining Claims*

#### a. *Claim One: Breach of Fiduciary Duty*

 Claim one for breach of fiduciary duty must be dismissed against all of the defendants due to URIC's failure to plead a requisite element of the claim. The requisite elements of breach of fiduciary duty are (1) the existence of a fiduciary relationship between the parties and (2) breach of the fiduciary duty. *Cramer v. Devon Group, Inc.,* 774 F.Supp. 176, 184 (S.D.N.Y.1991). Under New York law, the relationship of a debtor and creditor alone does not create a fiduciary duty. *Mfrs.*

*Hanover Trust Co. v. Yanakas,* 7 F.3d 310, 318 (2d Cir.1993); *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.,* 731 F.2d 112, 122 (2d Cir.1984). However, unusual circumstances such as a situation where one party assumes control and responsibility for another can create a fiduciary duty. *Mfrs. Hanover Trust Co.,* 7 F.3d at 318. Yet, URIC fails to allege any facts as to the Lender Banks or Bank of New York that may be construed as creating a fiduciary relationship. While the Bank of New York, as the trustee of the Alpha Trust, maintained a banking relationship with URIC, the plaintiff alleges no additional facts from which to infer a fiduciary relationship. The Lender Banks did not even have a banking relationship with URIC, and URIC fails to aver any circumstances that would create a fiduciary duty on the part of the Lender Banks. In fact, it is important to note that the Lender Banks were merely being paid back money owed to them pursuant to legitimate loans made to LGI. Thus, the Bank of New York and the Lender Banks' motion to dismiss the breach of fiduciary duty claim must be granted.

 Likewise, plaintiff's claim of breach of fiduciary duty against the Indenture Trustee must be dismissed. Unlike an ordinary trustee, an indenture trustee's duty is not undivided loyalty. *Meckel v. Cont'l Res. Co.,* 758 F.2d 811, 816 (2d Cir.1985). It is the duty of an indenture trustee "not to profit at the possible expense of [its] beneficiary." *Dabney v. Chase Nat'l Bank,* 196 F.2d 668, 670 (2d Cir.1952); *U.S. Trust Co. v. First Nat'l City Bank,* 57 A.D.2d 285, 296, 394 N.Y.S.2d 653 (1st Dep't.1977). Although an indenture trustee assumes broader duties and obligations after a default, an indenture trustee's pre-default duties are circumscribed by the express language of the indenture trust agreement. *See El-*

liott Assocs. v. J. Henry Schroder Bank Trust Co., 838 F.2d 66, 71 (2d Cir.1988); *Philip v. L.F. Rothschild & Co.*, No. 90 Civ. 0708, 1999 WL 771354, at \*1–2 (S.D.N.Y. Sept.29, 1999). There are "no additional, implicit pre-default duties or obligations except to avoid conflicts of interest." *Elliott Assocs.*, 838 F.2d at 71. Plaintiff concedes that the Indenture Trustee fulfilled its post-default obligations and bases its causes of action only on the Indenture Trustee's pre-default actions.

■ The complaint alleges that the Indenture Trustee had actual and/or constructive knowledge that the collateral used to secure URIC's loan was worthless, and nonetheless allowed URIC to enter into the loan agreement.[5] Assuming these allegations are true, as is required when deciding a motion to dismiss, the complaint does not allege a breach of the Indenture Agreement and provides no copy of the Agreement for review. In fact, the complaint does not allege how the Indenture Trustee breached any specific duty owed to URIC. Also, while the complaint alleges that Indenture Trustee received a benefit at the expense of URIC, there is no explanation of this benefit. It is difficult to even conceive of how the Indenture Trustee could possibly have benefitted at the expense of URIC. Furthermore, URIC was part of the closely knit family of companies that Albert Lawrence controlled, and as such, should have known the worth of the collateral. Under these circumstances it strains reason to impose a greater duty on the Indenture Trustee than is placed on URIC.

In sum, the complaint fails to allege a breach of the Indenture Agreement, the only definite duty owed to URIC by the Indenture Trustee. The complaint also fails to define any other breach that an indenture trustee may possibly owe a beneficiary. It fails to state a benefit that the Indenture Trustee might conceivably have received from URIC's participation in the Alpha Trust. It also seeks to place a higher duty on the Indenture Trustee than is placed on the beneficiary. For these reasons, plaintiff's claim of breach of fiduciary duty must be dismissed.

### b. *Claims Two and Three; Fraud*

■ The elements of fraud under New York common law are (1) a false representation was made; (2) the defendant intended to defraud; (3) the plaintiff believed defendant's misrepresentation; and (4) plaintiff was injured. *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir.1995).

■ Allegations of fraud must be pled with particularity. Fed.R.Civ.P. 9(b). Intent may be averred generally. *Id.; see Chill v. Gen. Elec. Co.*, 101 F.3d 263, 267 (2d Cir.1996). Particularity under Fed. R.Civ.P. 9(b) requires a plaintiff to specify in the complaint (1) the details of the time and place of the alleged misrepresentation; (2) the identity of the speaker; and (3) the content of the misrepresentations. *Mowers v. Paul Revere Life Ins. Co.*, 27 F.Supp.2d 135, 144 (N.D.N.Y.1998); *see also Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986).[6] Conclusory allegations and

---

5. It should also be noted that plaintiff alleges that the Indenture Trustee has spent "several hundred thousand dollars" in trying to recover the money owed to URIC and UCIC. (Am. Compl.¶ 138). It seems unlikely that the Indenture Trustee would spend such money trying to recover collateral it purportedly knew to be worthless.

6. Plaintiff, citing *Fishbaum v. Liz Claiborne, Inc.*, No. 98–9396, 1999 WL 568023, at \*4 (2d Cir. July 27, 1999), argues that the standard of specificity for pleading fraud only requires facts to establish "(a) the defendants had both motive and opportunity to commit fraud, or (b) ... facts that constitute strong circumstantial evidence of conscious misbehavior or

speculation are not sufficient to plead fraud with particularity. *See O'Brien v. Nat'l Prop. Analysts Partners,* 936 F.2d 674, 676 (2d Cir.1991). There must also be ample factual support to the charges. *Id.* The reason for specificity is to "provide a defendant with a fair notice of a plaintiff's claim, to safeguard a defendant's reputation from 'improvident charges of wrongdoing,' and to protect a defendant against the institution of a strike suit." *Id.*

▇ The complaint must also specify *each* defendant's contribution to the fraud. *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987)(dismissing claims against defendants whose actions were not specifically identified and only generally connected to allegedly fraudulent parties); *Daly v. Castro Llanes,* 30 F.Supp.2d 407, 414 (S.D.N.Y.1998)(granting motion to dismiss for failure to plead fraud with specific allegations of time, place, and content of individual defendant's fraudulent misrepresentation, only pleading through a close relationship with co-defendant).

▇ In the instant case, plaintiff fails to plead fraud with the specificity required under Fed. R. Civ. P 9(b). Plaintiff alleges fraud without ever once specifying the content of a misrepresentation. Plaintiff not only fails to specify the content of any misrepresentation, but also fails to name a specific document, phone call, or utterance from any specific person who represents any of the defendants that could be construed as a misrepresentation. Further, plaintiff fails to specify where or when any defendant made a misrepresentation to

URIC. The closest plaintiff comes to a specific allegation of misrepresentation is the statement that "Mr. Lawrence and his attorneys faxed a 'conceptual description' of the Alpha Trust financing scheme to Shawmut Bank Connecticut, N.A., on December 2, 1993." (Am.Compl.¶ 144.) This one statement in no way shows how a misrepresentation was made to URIC, let alone specifies how each defendant contributed to it. The rest of plaintiff's allegations are conclusory and require drawing inferences that exceed the limits of rational connection. Plaintiff's allegations fail to meet even the more general requirements for pleading intent.

▇ Additionally, plaintiff relies heavily on Albert Lawrence's participation in the Alpha Trust. However, it is not sufficient to plead fraud through a close relationship with another fraudulent party.[7] Devoid of any allegations of how any of the defendants used any misrepresentations to cause plaintiff harm, plaintiff's amended complaint fails to satisfy the specificity required for pleading fraud.

▇ Claims two and three must also be dismissed against all defendants due to URIC's failure to plead requisite elements of the causes of action. Fraud and constructive fraud based on concealment of information, as alleged here, require a showing of a duty to disclose. *Remington Rand Corp. v. Amsterdam–Rotterdam Bank, N.V.,* 68 F.3d 1478, 1483 (2d Cir. 1995); *Aaron Ferer,* 731 F.2d at 123. This duty usually arises where the parties are in a fiduciary relationship with one another. *Id.* As noted previously, URIC fails to

---

recklessness." However, *Fishbaum* is an unpublished case and therefore cannot be used as precedent. *See* U.S.Ct. of App.2d Cir. § 0.23, 28 U.S.C.A. Moreover, the standard quoted by plaintiff is the pleading requirement specifically for the intent element of fraud, not for fraud generally.

7. Plaintiff does not even allege that Albert Lawrence made any misrepresentations. Furthermore, Albert Lawrence is not a party to this suit.

aver sufficient facts in its complaint to show the Lender Banks, Indenture Trustee, or the Bank of New York owed URIC a fiduciary duty.

In the absence of a fiduciary duty, a duty to disclose may nonetheless arise when "(1) one party makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party, or (2) 'one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of this knowledge.'" *Remington Rand,* 68 F.3d at 1484 (quoting *Aaron Ferer,* 731 F.2d at 123) (citations omitted). The first test is not applicable here because URIC does not allege that the defendants made any partial or ambiguous statements. The second test, the doctrine of superior knowledge, does apply. Under this doctrine, a duty to disclose only arises when the defendant becomes aware that the plaintiff is acting under a mistaken belief of a material fact based on its non-disclosure. *Id.* at 1484. A defendant is not liable if it had no reason to believe that the plaintiff was acting under a mistaken perception. *Id.*

While URIC avers that the defendants had knowledge that the collateral securing URIC's loan to the Alpha Trust was worthless, it fails to allege that the defendants knew URIC made the loan based on misinformation or that this information was not readily available to URIC. The amended complaint states that Albert Lawrence was in control of URIC at all times material to the claims. However, URIC fails to plead that Albert Lawrence's control of the corporation contributed to URIC's lack of knowledge about the value of the collateral. Albert Lawrence himself controlled the collateral. He was also the controlling stockholder of URIC. Thus, URIC must have known the value of the collateral. The amended com-

plaint does not allege any additional facts from which to infer that URIC was prevented from discovering that the collateral was insufficient. Moreover, the amended complaint fails to allege why the defendants had reason to know that URIC made the $14,000,000.00 loan based on a mistaken belief about the collateral. Therefore, the defendants had no duty to disclose under the superior knowledge doctrine. Without sufficient allegations of a duty to disclose, a requisite element of URIC's fraud and constructive fraud claims, these claims must be dismissed.

### c. *Claim Five: Fraudulent Conveyance*

In its fifth claim, URIC avers fraudulent conveyance pursuant to N.Y. Debt. & Cred. Law § 270 et. seq. (McKinney 2001). URIC's theory of the fraudulent conveyance claim seems to be that, as a result of defendants' fraudulent behavior as to the collateral securing its loan to the Alpha Trust, URIC became insolvent. While URIC does not cite a specific section as its basis for the claim, only section 276 is applicable. New York Debtor & Creditor Law § 276 states, "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." Because URIC's claim is based on fraud, it must be pled with particularity. Fed.R.Civ.P. 9(b); *In re Crazy Eddie Securities Litig.,* 802 F.Supp. 804, 816 (E.D.N.Y.1992); *see generally, O'Brien,* 936 F.2d at 675. As stated previously, URIC fails to assert specific allegations supporting the means and intent of the defendants to defraud URIC. Therefore, this claim is insufficient.

### d. *Claim Six: Conversion*

Conversion under New York law is "any unauthorized exercise of do-

minion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property." *Atlanta Shipping Corp., v. Chemical Bank,* 818 F.2d 240, 249 (2d Cir.1987)(quoting *Meese v. Miller,* 79 A.D.2d 237, 242, 436 N.Y.S.2d 496 (N.Y.App. Div. 4th Dep't 1981)). Plaintiff must show a legal ownership or a superior right of possession to the property. *AMF Inc. v. Algo Distribs.,* 48 A.D.2d 352, 356, 369 N.Y.S.2d 460 (2d Dep't 1975); *see also Trafalgar Power, Inc. v. Aetna Life Ins. Co.,* 131 F.Supp.2d 341, 348 (N.D.N.Y. 2001). Conversion is not a valid claim for an enforcement of an obligation to pay money, *Ehrlich v. Howe,* 848 F.Supp. 482, 492 (S.D.N.Y.1994), or for enforcement of a bargain. *In re Chateaugay Corp.,* 10 F.3d 944, 958 (2d Cir.1993).

■ Plaintiff does not have a legal ownership or a right of possession in the $14,000,000.00 it loaned to the Alpha Trust. It voluntarily made the loan and accepted specific collateral in return. Alpha Trust thereafter had authorization to control the funds and loan them to LGI. URIC knew that the funds were to be loaned to the Alpha Trust, immediately loaned out again to LGI, and used to repay the Lender Banks. Plaintiff had no intent to retain or exercise control. URIC agreed to be paid back in monthly payments as part of the contract, not paid back from the specific funds that it loaned to the trust. It cannot now claim a possessory or ownership interest in that which it freely gave away as a loan in a contract that was bargained for and supported by consideration. The claim here is essentially a breach of contract claim for the Alpha Trust's failure to repay the loan from URIC, or for the lack of value of the consideration or collateral that plaintiff received. Neither theory is actionable under a conversion claim.

■ Plaintiff also does not plead the claim of conversion with the requisite specificity. *See O'Brien,* 936 F.2d at 676 (dismissing claims based on fraud under Fed. R.Civ.P. 9(b) for lack of specificity); *Daly,* 30 F.Supp.2d at 414 (holding conversion claim that is premised on fraudulent taking be pled under Fed.R.Civ.P. 9(b) because claim is based on fraud). As discussed above, plaintiff fails to plead the elements of fraud with specificity. In addition, plaintiff fails to plead the elements of conversion with specificity. Plaintiff does not specifically or sufficiently address the reasons it has a possessory interest in, or how any defendant exercised unauthorized control over, the funds in question.

■ Plaintiff also fails to identify the specific funds converted. New York law requires that the money in question be describable or identifiable in the same way one would describe a specific chattel. *Mfrs. Hanover Trust Co. v. Chemical Bank,* 160 A.D.2d 113, 124, 559 N.Y.S.2d 704 (N.Y.App. Div. 1st Dep't 1990). The money must be part of a separate, identifiable, segregated fund in order to bring an action for conversion. *High View Fund, L.P. v. Hall,* 27 F.Supp.2d 420, 429 (S.D.N.Y.1998). In the instant case, the $14,000,000.00 in question was mingled in the Alpha Trust with the $13,000,000.00 from the UCIC loan. These mingled funds were then loaned to LGI, which then paid the Lender Banks their respective amounts due. The funds are now so dispersed that they are not identifiable or segregated. Therefore, an action for conversion is not appropriate.

## B. *Plaintiff's Motion for Leave to Amend Complaint*

### 1. *Standard*

■ "A party may amend the party's complaint once as a matter of course . . . .

Otherwise a party may amend the party's pleading only by leave of court ... and leave shall be freely given ...." Fed. R.Civ.P. 15(a). The trial court, however, has discretion in granting or denying a motion to amend. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

"[W]hen a cross-motion for leave to file an amended complaint is made in response to a motion to dismiss under Fed.R.Civ.P. 12(b)(6), leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim." *Milanese v. Rust–Oleum Corp.,* 244 F.3d 104, 110 (2d Cir.2001); *see also Spoto v. Herkimer County Trust,* No. 99–CV–1476, 2000 WL 533293, at *6 (N.D.N.Y. April, 27, 2000)(dismissing cross-motion to amend complaint that failed to sufficiently allege fraud when original complaint was dismissed by a judgment on the pleadings).

### 2. Additional Claims Under Proposed Second Amended Complaint

### a. Claim One: Money Had and Received

■ Under New York law, a claim for money had and received requires that "(1) defendant received money belonging to the plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money." *Aaron Ferer,* 731 F.2d at 125 (citing *Miller v. Schloss,* 218 N.Y. 400, 407, 113 N.E. 337 (N.Y.1916)); *see also A.I.A. Holdings, S.A. v. Lehman Bros., Inc.,* 97 Civ. 4978, 1999 WL 47223, at *5 (S.D.N.Y. Feb.3, 1999).

■ First, as discussed above, plaintiff has no possessory interest in the money because it was freely given as a loan. No defendant group received money belonging to the plaintiff. The Lender Banks only received money from LGI to repay legitimate loans. The Indenture Trustee merely held collateral. The Bank of New York as Trustee of the Alpha Trust only passed the money through to LGI and received no benefit from the transaction. Therefore, the first element of money had and received is not satisfied. Second, plaintiff does not have an equitable claim to the money. Again, in the proposed second amended complaint, plaintiff has failed to sufficiently plead any real fraud or wrongdoing. There is no equitable reason that the Lender Banks should not be permitted to keep money received in repayment of prior legitimate loans.

### b. Claim Two: RICO

■ The elements of an action based on mail or wire fraud are "(1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.,* 84 F.3d 629, 633 (2d Cir.1996); *see* 19 U.S.C. §§ 1962(a)-(d). The first RICO element requires the existence of fraud and a misrepresentation that is material to the harm of the victim. *Moore v. PaineWebber, Inc.,* 189 F.3d 165, 170 (2nd Cir.1999); *see Asch v. Philips, Appel & Walden, Inc.,* 867 F.2d 776, 777 (2d Cir.1989)(failing to plead any fraud in the amended complaint "means that there are no predicate acts to support a RICO claim").

■ RICO claims must be pled under Fed.R.Civ.P. 9(b) when the predicate acts are based on fraud. *Moore,* 189 F.3d at 172; *Pahmer v. Greenberg,* 926 F.Supp. 287, 300 (E.D.N.Y.1996). Because of extensive misuse of the RICO statute for civil claims, specificity in RICO pleading is needed to extinguish superficial claims at

the beginning of the suit. *Plount v. Am. Home Assur. Co.*, 668 F.Supp. 204, 206 (S.D.N.Y.1987); *see also Spoto*, 2000 WL 533293, at *6.

 Plaintiff's proposed RICO claims are futile because they cannot survive a Fed.R.Civ.P. 12(b)(6) motion to dismiss. As described above, plaintiff has not sufficiently pled a claim for fraud in the amended complaint. Plaintiff fails to remedy this defect in the proposed second amended complaint. In fact, plaintiff has still not alleged any misrepresentation made by anyone. Plaintiff has only made conclusory statements and bare allegations of wrongdoing. This is not even enough to meet the lesser, general pleading of intent. With no fraud and no misrepresentation pled, plaintiff cannot support a claim under RICO, and the motion to amend the complaint a second time must be denied as futile. It is noted that the present case is a good example of the misuse of RICO, statutes designed to be used against organized crime.

## IV. CONCLUSION

The statute of limitations bars the plaintiff's negligence claim. The pleadings are insufficient to sustain the remaining five claims. Therefore, it is

ORDERED, that

1. The defendants' motions to dismiss plaintiff's amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) are GRANTED;

2. The plaintiff's motion to further amend the complaint is DENIED as futile; and

3. The amended complaint is DISMISSED in its entirety.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

1) LGI $27 million loans Due 12/31/93 → Lender Banks (defendants)