**In re WALLACE'S BOOKSTORES, INC., Debtor.**

No. 01–50545.

United States Bankruptcy Court,
E.D. Kentucky,
Lexington Division.

July 23, 2004.

722

Dinsmore & Shohl LLP, Lexington, KY, for Debtor.

## MEMORANDUM OPINION

WILLIAM S. HOWARD, Bankruptcy Judge.

### I. Introduction

Bernard Katz as liquidating supervisor (the "Liquidating Supervisor") is before the court on the Motion for Estimation of Thomas–Related Claims Pursuant to Provision 7.4 of the Plan that he filed in the above-styled case on January 29, 2004. Having considered the motion and the attachments thereto, the response and the attachments thereto, the Liquidating Supervisor's reply, the itemizations of the claims filed pursuant to order of the court, and the arguments of counsel, the court has determined that the motion must be sustained to the extent outlined below.

### II. Factual and Procedural Background

Prior to the commencement of this case, R. David Thomas and affiliated entities made various loans and issued various guaranties to Wallace G. Wilkinson ("Mr. Wilkinson"), the principal of Wallace's Bookstores, Inc. (the "Debtor"). On February 28, 2001, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing this case. On March 21, 2002 the creditors' committee filed a Revised Second Amended Joint Consolidated Chapter 11 Plan of

Liquidation [etc.] (the "Plan"), which the court confirmed on May 20, 2002. The holders of the "Thomas–Related Claims," as that term is defined below (the "Thomas–Related Claimants"), had notice of the Plan, did not object to its confirmation, and did not appeal the confirmation order.

Section 7.4 of the Plan provides:

*Estimation.* In order to effectuate Distributions pursuant to the Amended Consolidated Plan and to avoid undue delay in the administration of the Estates, the Debtors or the Creditors' Committee through the Effective Date, or the Liquidating Supervisor, thereafter, shall have the right, at any time, to seek an order of the Bankruptcy Court, after notice and a hearing (which notice shall be limited to the Holder of such Disputed Claim and which hearing may be held on an expedited basis), estimating a Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, irrespective of whether an Objection to such Claim has been filed or the Bankruptcy Court has ruled on any such Objection. If the Bankruptcy Court estimates any contingent, Disputed or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor or the Creditors' Committee prior to the Effective Date, and the Liquidating Supervisor thereafter, may elect to pursue any supplemental proceedings to object to any ultimate payment on account of such Claim. All of these Objections and resolution procedures are cumulative and not necessarily exclusive of one another. In addition to seeking estimation of Claims, the Debtors prior to the Effective Date, and the Liquidating Supervisor, thereafter, may

resolve or adjudicate any Disputed Claim in the manner in which the amount of such Claim and the rights of the Holder of such Claim would have been resolved or adjudicated if these Chapter 11 Cases had not been commenced. Claims may be subsequently compromised, settled, withdrawn or resolved by the Debtors, or Liquidating Supervisor, as applicable, pursuant to Section 7.1 of this Amended Consolidated Plan.

On March 18, 2002 the Debtor filed an objection to the allowance of the claims (the "Thomas–Related Claims") of the successors in interest to Mr. Thomas and affiliated entities, namely the R. David Thomas Trust U/A Dated 8/10/1997 (the "Dave Thomas Trust"), the Estate of R. David Thomas (the "Dave Thomas Estate"), and the Estates of R. David Thomas and I. Lorraine Thomas (the "Dave and Lorraine Thomas Estates"), so there is no dispute that those claims constitute "Disputed Claims" within the meaning of Section 7.4. (Plan §§ 2.1, 7.6.)

There are three Thomas–Related Claims: in proof of claim no. 2711, the Dave Thomas Trust asserts a claim in the amount of $29,009,730.27, representing the principal and interest owing by Mr. Wilkinson on promissory notes issued to the claimant or its assignors; in proof of claim no. 2712, the Dave Thomas Estate asserts a claim in the amount of $8,053,242.54, representing the principal and interest owing by Mr. Wilkinson on promissory notes issued to the claimant's assignor; and, in proof of claim no. 2713 (as amended), the Dave and Lorraine Thomas Estate asserts a claim in the amount of $16,000,000.00, representing the amount paid by the claimants in satisfaction of their obligations under a guaranty of an indebtedness of Mr. Wilkinson to a third party lender, United Company.[1] The bases of all three claims are alleged causes of action for fraud, conversion, mail fraud, wire fraud, and RICO, the claimants asserting that they or their predecessors in interest were wrongfully induced by Debtors to extend credit to Mr. Wilkinson. None of the claims includes punitive or treble damages. Claims of other creditors total approximately $131,000,000.

The Liquidating Supervisor has made one interim distribution, presently has on hand approximately $23 million, and desires to make a second interim distribution in the near future. If required to set aside a reserve for the Thomas–Related Claims, the amount available for distribution to other creditors would be reduced to approximately $12 million and the Liquidating Supervisor would opt not to make another distribution at this time.

## III. Discussion

### A. Liquidating Supervisor's Entitlement to Estimation

■ The Thomas–Related Claims constitute "Disputed Claims" within the meaning of the Plan, so Section 7.4 applies. Confirmation of a Chapter 11 plan binds "any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan." 11 U.S.C. § 1141(a). Indeed, the Thomas–Related Claimants acknowledge that Section 7.4 is binding on them. Instead, they

---

1. The claims limit interest to the amounts that accrued prior to the filing of an involuntary bankruptcy petition against Mr. Wilkinson. The claims do not take into account payments received on the debts in question from other sources, but do not include legal expenses incurred in attempting to enforce those indebtednesses.

make several arguments as to why estimation should not be permitted under § 502(c) of the Bankruptcy Code. The answer to all of these arguments is that § 502(c) does not control; rather, the Liquidating Supervisor's right to estimation of Disputed Claims is governed by Section 7.4 of the Plan, which expands considerably on § 502(c).

First, the Thomas–Related Claimants point out that estimation under § 502(c) is available only if the fixing or liquidation of the claim would "unduly delay the administration of the case." Delay in addressing the Thomas–Related Claims will not, as in most § 502(c) estimation cases, prolong the plan confirmation process or present a risk of putting a debtor in possession out of business. The need for expedition in this case is limited to the desire to move forward in getting additional funds into the hands of creditors. That desire is not inconsequential, however, because the Plan—including Section 7.4—bestowed on creditors a right and expectation of prompt distributions. In any event, while Section 7.4 indicates that one of its purposes is to avoid "undue delay in the administration of the Estates" (as well as "to effectuate Distributions pursuant to the Amended consolidated Plan"), that provision does not make "undue delay" a prerequisite to Section 7.4's availability. Thus, the Liquidating Supervisor's right to

estimation is not affected by the lack of urgency in resolving the Thomas–Related Claims. The court will, however, take the relatively moderate consequences of delay into account in formulating an estimation procedure, as discussed below.

Second, the Thomas–Related Claimants point out that § 502(c) of the Bankruptcy Code permits the estimation of only contingent or unliquidated claims, not disputed claims. Plan Section 7.4, however, expands on § 502(c), expressly providing for the estimation of "Disputed Claims." [2] The Thomas–Related Claimants' third argument (that estimation would not expedite the distribution process) adds nothing to their first argument, and is laid to rest by the fact that Section 7.4 does not make a need for expedition a prerequisite to invoking the estimation process.

The Thomas–Related Claimants' fourth argument is that the Liquidating Supervisor is attempting to use the estimation procedure for an improper purpose, as a precursor to disallowance of the Thomas–Related Claims. [3] Yet that is precisely what Section 7.4 of the Plan envisions, expressly providing that "these Objections and resolution procedures are cumulative and not necessarily exclusive of one another." The Thomas–Related Claimants acknowledge that Section 7.4 binds them, so they may not be heard to question the

---

**2.** Even in cases in which § 502(c), rather than a plan provision, determines the propriety of estimation, the courts consider the likelihood of success in proving the validity of the claim in determining whether the claim has any value. *E.g., In re Aspen Limousine Serv., Inc.,* 193 B.R. 325, 339 (D.Colo.1996) (affirming estimation of value of claim at $0 due to failure of proffer of proof that claimant would likely succeed in proving validity of claim); *In re Windsor Plumbing Supply Co.,* 170 B.R. 503, 521–22 (Bankr.E.D.N.Y.1994) (discussed in text).

**3.** The Thomas–Related Claimants argue that "an estimation under Section 502(c) generally should result in an allowed claim." That is, in fact, one option available to the court pursuant to Section 7.4 of the Plan: "If the Bankruptcy Court estimates any contingent, Disputed or unliquidated Claim, *that estimated amount will constitute either the Allowed Amount of such Claim* or a maximum limitation on such Claim, as determined by the Bankruptcy Court. (emphasis added)" While the Liquidating Supervisor's motion proposes the latter approach, the former is within the court's discretion.

procedure and purposes stated therein. Fifth, the Thomas–Related Claimants argue that their claims were unfairly singled out for estimation. Again, Plan Section 7.4 controls, and it places the decision for selecting the process for resolving claims squarely within the discretion of the Liquidating Supervisor. The sixth argument set forth in the Thomas–Related Claimants' response goes to the merits of their claims, which the court need not address at present.

■ At the hearing on the motion, the Thomas–Related Claimants added a seventh argument: that, under § 502(c) of the Bankruptcy Code, the court may not estimate claims for purposes of distribution without the consent of all parties. Section 7.4, however, includes no such restriction; nor does § 502(c), which permits estimation "for purpose of allowance." Moreover, Congress has defined "core proceeding" to include the estimation of claims for purposes of plan confirmation "but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11." 28 U.S.C. § 157(b)(2)(B). The implication from this language is that the estimation of claims *other than* personal injury and wrongful death claims for purposes of distribution does constitute a core bankruptcy matter and must, therefore, be within the scope of § 502(c). *In re Poole Funeral Chapel, Inc.,* 63 B.R. 527, 532 (Bankr.N.D.Ala.1986). "It is also well established that the estimation proceeding may be used ... to determine the allowed amount for distribution purposes." *In re Trident Shipworks, Inc.,* 247 B.R. 513, 514 (Bankr.M.D.Fla.2000); *see In re C.F. Smith & Assocs., Inc.,* 235 B.R. 153, 160 (Bankr.D.Mass.1999) ("The merits of a claim may be finally adjudicated under an estimation procedure.")(citing *Midway*

*Motor Lodge v. Innkeepers' Telemanagement & Equip. Corp.,* 54 F.3d 406 (7th Cir.1995)).

## B. Procedure and Standard for Claims Estimation

■ "[T]he bankruptcy court has broad discretion to fashion estimation procedures," using " 'whatever method is best suited to the circumstances.' " *In re Eagle Bus Mfg., Inc.,* 158 B.R. 421, 437 (S.D.Tex. 1993) (quoting *Addison v. Langston (In re Brints Cotton Mktg., Inc.),* 737 F.2d 1338, 1341 (5th Cir.1984)); *accord, e.g., In re Aspen Limousine Serv., Inc.,* 193 B.R. 325, 337 (D.Colo.1996); *In re Evans Prods. Co.,* 60 B.R. 863, 868 (S.D.Fla.1986). "The methods used by courts have run the gamut from summary trials to full-blown evidentiary hearings to a mere review of pleadings, briefs, and a one-day hearing involving oral argument of counsel." *In re Windsor Plumbing Supply Co.,* 170 B.R. 503, 520 (Bankr.E.D.N.Y.1994) (citations omitted). The court concludes that, under the circumstances of this case—where estimation will effectively limit the allowed amount of the claims, where the need for dispatch is not particularly great, and where the sums at stake are large—a procedure closer to the "full-blown evidentiary hearing" is appropriate. The court will fashion a procedure similar to the one approved by the district court in the *Eagle Bus* case, *Eagle Bus Mfg., Inc.,* 158 B.R. at 437 (parties were afforded seven hours to present evidence and testimony by affidavit with live cross-examination), and by the bankruptcy court in the *MacDonald* case, *In re MacDonald,* 128 B.R. 161, 166–67 (Bankr.W.D.Tex.1991) (court approved a "summary trial" procedure involving proffers of evidence, affidavits, deposition testimony, exhibits, answers to discovery requests, and limited live testimony).

As for the standard for estimation, it has been held that, even when the amount of damage is fixed, liquidated, and undisputed, the estimation process should take into account the likelihood that the claimant would prevail on the merits and apply that probability to the amount of damage. *Windsor Plumbing Supply Co.,* 170 B.R. at 521–22; *In re Farley, Inc.,* 146 B.R. 748, 753 (Bankr.N.D.Ill.1992). The Thomas–Related Claimants have not suggested an alternative to this approach, and the court concludes that this is a reasonable method of estimating the Thomas–Related Claims.

### C. Conversion Claim

There is at least one issue that the court may determine as a matter of law prior to the estimation hearing, that is the viability of the Thomas–Related Claimants' claim for conversion. That claim is based on an assertion that the Debtor obtained and used the proceeds of loans made or guaranteed by the claimants for purposes other than the purposes for which the loans were made. Aside from the apparent lack of evidence that the Debtor, rather than Mr. Wilkinson individually, controlled the disbursement of the funds, the Thomas–Related Claimants lack standing to assert a conversion claim.

"In order to state a claim for conversion, a plaintiff must allege facts sufficient to indicate that (1) the plaintiff had ownership rights at the time of the conversion, (2) the defendants obtained the property by a wrongful act or dispossession of the plaintiff's property rights, and (3) the plaintiff suffered harm." *Anderson v. Pine S. Capital, LLC,* 177 F.Supp.2d 591, 603 (W.D.Ky.2001) (citing *Bowling Green Livestock Market, Inc. v. Young (In re Clark),* 206 B.R. 439, 441 (Bankr. W.D.Ky.1996)). "In order to prevail under this first element of conversion, [the claim-ant] must show either: (1) absolute and unqualified title; or (2) qualified, limited title, provided that such title carries with it a right of possession." *Clark,* 206 B.R. at 441. The Thomas–Related Claimants never had any interest in the funds lent to Mr. Wilkinson by United Company, and had no interest in the funds that the Thomas–Related Claimants themselves (i.e., their predecessors in interest) lent to Mr. Wilkinson once the funds were advanced.

A lender simply does not retain an interest in funds lent pursuant to an ordinary loan transaction and, therefore, lacks standing to assert a conversion claim for improper disbursement or use of the funds. *E.g., United Republic Ins. Co. v. Chase Manhattan Bank,* 168 F.Supp.2d 8, 18–19 (N.D.N.Y.2001). Accordingly, the court estimates that the Thomas–Related Claimants' claim for conversion has no value as a matter of law.

### IV. Conclusion

For the foregoing reasons, the court will enter a separate order sustaining the Liquidating Supervisor's motion, outlining a procedure for estimation, and scheduling a status conference to establish a schedule for the estimation hearing and related deadlines.