FILED

SEP 26 2013

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.  NC-12-1385-DJuPa |
| MICHAEL THOMAS FALK, | Bk. No.  08-12561-AJ |
| Debtor. | |
| SHANNON FALK, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| MICHAEL THOMAS FALK, | |
| Appellee. | |

Submitted without Oral Argument
September 20, 2013

Filed – September 26, 2013

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Alan Jaroslovsky, Chief Bankruptcy Judge, Presiding

Appearances:    Merle C. Meyers, Esq. and Kathy Quon Bryant, Esq.
of Meyers Law Group, P.C. on brief for Appellant
Shannon Falk; Craig A. Burnett, Esq. on brief for
Appellee Michael Thomas Falk.

Before:  DUNN, JURY and PAPPAS, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

The appellant, Shannon Falk ("Shannon"), appeals the bankruptcy court's order (1) estimating one of her proofs of claim at zero for distribution purposes in the chapter 7[2] bankruptcy case of her former spouse, the appellee, Michael Thomas Falk ("Michael"), and (2) abstaining from adjudicating her claims under 28 U.S.C. § 1334(c)(1) and (2).[3]  We AFFIRM.

**FACTS**

Shannon and Michael's marital trust and divorce

Shannon and Michael married in 1989.  While married, they established a marital trust by an agreement ("Marital Trust Agreement").  Under the Marital Trust Agreement, Shannon and Michael transferred various assets into a trust and transmuted them into community property ("Community Property Assets").  The Community Property Assets included the following:[4] 1) a rental property located in Santa Rosa, California ("Santa Rosa property"); 2) a promissory note and trust deed relating to a

---

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[3] The bankruptcy court decided to abstain under both 28 U.S.C. § 1334(c)(1), permissive abstention, and 28 U.S.C. § 1334(c)(2), mandatory abstention.  Because we may affirm on any ground supported by the record, see Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008), and have determined that the bankruptcy court did not abuse its discretion in permissively abstaining from adjudicating the claims, we need not address its mandatory abstention decision.

[4] The Community Property Assets included other assets that are not the subject of this appeal.

2

73-acre parcel of real property located in Healdsburg, California;[5] 3) a life insurance policy;[6] 4) interests in three limited partnerships, two of which were located in New York ("New York Partnership Interests"); and 5) a general partnership interest.[7]

Two years after Shannon and Michael separated in 2005, the state court entered an order dissolving their marriage. It also entered an order requiring Michael to pay Shannon $969 per month in spousal support ("Spousal Support Order"). However, the state court did not make any determinations as to the division of property or any other domestic support obligations ("Dissolution Issues").

---

[5] Shannon described the real property located in Healdsburg, California as consisting of 83 acres. Christopher Johnson purchased the real property from Michael. (Michael financed Christopher's purchase of the real property in the form of a promissory note secured by a trust deed.) In a declaration, Christopher described the real property as consisting of 73 acres.

[6] It is unclear whether only one life insurance policy or various life insurance policies were placed into the marital trust. Exhibit A to the Marital Trust Agreement appears to list only one life insurance policy with a $75,000 face value. However, in her trial brief for the evidentiary hearing on Michael's objections to her proofs of claim, Shannon indicates that "various life insurance policies having an aggregate cash surrender value in excess of $30,000 . . ." were placed in the marital trust.

[7] Shannon described the partnership interest as a 12% interest in a general partnership, Oroville Associates, identified in the Marital Trust Agreement as Feather River Cinemas, LP. Exhibit A to the Marital Trust Agreement simply lists a "Limited Partnership interest in Feather River Cinemas, LP."

Shannon's chapter 11 bankruptcy case

On July 20, 2007, Shannon filed a chapter 11 bankruptcy petition.[8] At the time she filed for bankruptcy, the Dissolution Issues remained pending in state court.

Shannon scheduled the Community Property Assets and $12,000 in past due alimony and child support as part of her bankruptcy estate. She scheduled Michael as a general unsecured creditor with an unknown claim amount, characterizing his claim as unliquidated and disputed.

Shannon referenced the marital trust in her statement of financial affairs ("SOFA"). She noted that the marital trust involved "all property." She also mentioned in her SOFA the dissolution proceeding pending in state court.

Shannon's adversary proceeding against Michael

Shannon initiated an adversary proceeding against Michael seeking a determination that the New York Partnership Interests were community property under the Marital Trust Agreement and were part of her bankruptcy estate. She also sought an order requiring Michael to turn over to her bankruptcy estate all of the distributions received on account of the New York Partnership Interests ("New York Partnership Interest Distributions").

Shannon moved for summary judgment, which the bankruptcy

---

[8] Judge Jaroslovsky presided over the bankruptcy cases of both Shannon and Michael.

court granted in an order entered on February 1, 2008.[9]  In the memorandum decision issued on January 22, 2008, the bankruptcy court determined that the New York Partnership Interests had been transmuted into community property.  In the judgment entered on June 23, 2008 ("Judgment"), the bankruptcy court also determined that the New York Partnership Interests were property of the estate under § 541(a)(2).  It ordered Michael to turn over to Shannon's bankruptcy estate the New York Partnership Interest Distributions.[10]

On November 26, 2008, the bankruptcy court entered an order holding Michael in contempt for failing to comply with the Judgment ("Contempt Order").[11]  Two days later, Michael filed his

---

[9] Michael filed a cross-motion for summary judgment, which the bankruptcy court denied.

[10] Michael appealed the bankruptcy court's order granting summary judgment in favor of Shannon.  The district court affirmed the bankruptcy court.  Michael then appealed to the Ninth Circuit; the Ninth Circuit dismissed the appeal for failure to file the opening brief.

[11] On November 5, 2008, Shannon filed an ex parte motion for an order to show cause re: contempt ("Ex Parte OSC Motion"), contending that Michael failed to turn over the New York Partnership Interest Distributions pursuant to the Judgment.  One day later, the bankruptcy court entered an order granting the Ex Parte OSC Motion.
After a hearing, the bankruptcy court granted Shannon's contempt motion and entered the Contempt Order.  Under the Contempt Order, Michael was required to pay $500 per day ("penalty") for each day he failed to comply with the terms of the Judgment.  If he posted a bond or complied with the Judgment, the penalty would be waived.

own chapter 7 bankruptcy petition.[12]

Michael's chapter 7 bankruptcy case

Michael scheduled the Santa Rosa property, the New York Partnership Interests and the life insurance policy as part of his bankruptcy estate. He also scheduled a "claim for reimbursement against [his] ex-wife[,] Shannon Falk[,] for separate property contribution and for [the] value of contribution of all separate property that was subsequently transmuted at [the] time of transmutation . . . ." He described the value of this claim as "unknown."

Michael referenced the marital trust in his SOFA. Like Shannon, he noted that the marital trust involved "all property." He also listed in his SOFA the dissolution proceeding pending in state court. He noted that the dissolution proceeding had been bifurcated, addressing the divorce and the division of assets separately.

Michael scheduled Shannon as an unsecured priority creditor with a spousal support claim in the amount of $769. He also listed in his SOFA the adversary proceeding, noting the Judgment in Shannon's favor.

Shannon's chapter 11 plan

More than a year after she obtained the Judgment, Shannon

---

[12] Michael previously had filed a chapter 13 bankruptcy petition (07-10860). (Judge Jaroslovsky presided over that bankruptcy case.) Michael's chapter 13 case was dismissed on July 31, 2007 on a motion filed by Michael.

submitted a chapter 11 plan in her bankruptcy case.[13]  She proposed to pay all allowed general unsecured claims in cash in full, plus interest, in quarterly installments over sixty months, "upon satisfaction of the [J]udgment."[14]  She also proposed to retain "such interests subject to division as community property consistent with [the Judgment]."  Shannon reserved "the right to adjudicate the transmutation of the [Community Property Assets] described in the [Marital Trust Agreement] as between such interest holders, including, but not limited to . . . division . . . and remedies to collect sums found due."

Shannon also mentioned in her Chapter 11 Plan her intent to "compel division of the [Community Property Assets] as determined by [the bankruptcy] court and any other Court of competent jurisdiction."  She also indicated that she would initiate another adversary proceeding "to determine the character of all assets described in the [Marital Trust Agreement] . . . ."  Upon confirmation of her Chapter 11 Plan, Shannon asserted "standing to enforce community property rights, collect property of the estate, [and] litigate the rights of the estate and [the] debtor in property . . . ."

She further provided in her Chapter 11 Plan that for five

---

[13] Shannon submitted a total of five chapter 11 plans.  She filed the last amended chapter 11 plan titled, "Fourth Amended Chapter 11 Plan of Reorganization" ("Chapter 11 Plan"), on July 17, 2009.

[14] Shannon proposed to pay the general unsecured claims also with "capital accounts, liquidation proceeds of [the] movie theater interest, [and] proceeds of [the] sale of [the real property located in Santa Rosa, California]."

years or until "all allowed non-subordinated claims are paid pursuant to the chapter 11 plan," the chapter 11 trustee was to remain in possession of the bankruptcy estate assets. When that time expired, the bankruptcy court was to approve an inter vivos trust, naming a successor trustee to oversee the remaining assets. Upon payment in full of allowed administrative expenses and allowed priority and general unsecured non-subordinated claims, the successor trustee was to continue to collect the New York Partnership Interest Distributions. The successor trustee was to apply such distributions as follows: 1) to any approved settlement agreement; 2) for a living allowance for Shannon; and 3) to payment of subordinated claims.[15]

The bankruptcy court entered an order conditionally confirming Shannon's Chapter 11 Plan on August 7, 2009. Following a final hearing, the bankruptcy court entered an order confirming the Chapter 11 Plan on October 20, 2009.

On May 6, 2011, Shannon filed a motion seeking the bankruptcy court's approval of a living allowance and an inter vivos trust pursuant to the confirmed Chapter 11 Plan. She reported that the chapter 11 trustee had paid all allowed non-subordinated claims in full as of January 31, 2011. On August 10, 2011, the bankruptcy court entered an order approving the inter vivos trust and directing the successor trustee to pay Shannon $5,000 per month as a living allowance.

Shannon later moved for entry of a final decree,

---

[15] The subordinated claims consisted of the postpetition fees of Shannon's former bankruptcy counsel, David Chandler, and her former special counsel, Richard Sax.

representing that all allowed non-subordinated claims and subordinated claims had been paid in full. On August 19, 2012, the bankruptcy court entered a final decree and closed her bankruptcy case.

<u>Shannon's proofs of claim in Michael's chapter 7 bankruptcy case</u>

Meanwhile, on January 27, 2011, Michael filed objections ("claim objections") to three proofs of claim (collectively, "Claims") filed by Shannon in his bankruptcy case. She filed her first proof of claim on December 24, 2008 ("Claim #1"), her second proof of claim on June 17, 2009 ("Claim #21"), and her third proof of claim on June 18, 2009 ("Claim #24"). Shannon did not attach any documents in support of her Claims.

Claim #1 was in the amount of $11,628, all of which was allegedly entitled to priority as a domestic support obligation under § 507(a)(1)(A) or (a)(1)(B). Claim #1 was based on "dissolution of marriage."

Claim #21 was in the amount of $10,100,000. Of this amount, $100,000 was allegedly entitled to priority as a domestic support obligation under § 507(a)(1)(A) or (a)(1)(B). Claim #21 was based on "support, property division, [and] undisclosed property."

Claim #24 was in the amount of $17,442, all of which was allegedly entitled to priority as a domestic support obligation under § 507(a)(1)(A) or (a)(1)(B). Claim #24 was based on "support arrears."

Michael objected to each claim on the same grounds. He contended that there was no way to determine the validity of the

9

Claims because Shannon did not submit or produce any documents or proof in support of them. He also argued that the Claims involved non-bankruptcy law issues – child and spousal support and division of property – that should be resolved in state court. Michael further asserted that Claim #1 and Claim #24 were duplicates of Claim #21. He asked that the bankruptcy court abstain from adjudicating the Claims.

Shannon responded to Michael's objections, asserting that she had valid Claims based on the spousal support order, the Marital Trust Agreement and the Judgment.

She argued that she had a valid claim for spousal support under the spousal support order, which required Michael to pay her $969 per month. She alleged that Michael owed her approximately $11,000 in spousal support as of the petition date.

Shannon also contended that she had a valid general unsecured claim of $1,059,283.04, arising from Michael's failure to turn over the Community Property Assets and the distributions therefrom pursuant to the Marital Trust Agreement and the Judgment. She moreover alleged that Michael had "a fiduciary duty" to turn over to her any distributions he received from the Community Property Assets. Because he violated his fiduciary duty, Shannon was "entitled to an award of the value of the concealed assets, the income, profits and income from such assets[,] as well as punitive and exemplary damages [under] the Family Code."

Following a preliminary hearing, the bankruptcy court set an evidentiary hearing on Michael's claim objections for July 24, 2012. At the evidentiary hearing, Michael withdrew his objection

10

to Claim #1, as it was "the only claim that had any support at all." Tr. of July 24, 2012 hr'g, 9:11. The bankruptcy court therefore allowed Claim #1 in the amount filed.

With respect to Claim #21 and Claim #24, the bankruptcy court decided to abstain from adjudicating them and estimated them at zero for distribution purposes. It believed that, in filing Claim #21 and Claim #24, Shannon was "trying to turn community property arguments into money claims" and "trying to transmute Family Law issues into money claims." Tr. of July 24, 2012 hr'g, 3:20-21, 7:1-2. The bankruptcy court refused "to be a substitute for the Family Law Court," pointing out that Claim #21 and Claim #24 involved family law issues that should be determined by the state court. Tr. of July 24, 2012 hr'g, 4:6-7.

The bankruptcy court went on to say that "all [it] cared about [was] making sure the third parties [i.e., creditors] got paid" and "all [the bankruptcy court] ever wanted to do was clear out the bankruptcy issues so it's strictly a Family Law issue and then send it back to State Court." Tr. of July 24, 2012 hr'g, 6:4-5, 6:21-23.

A day after the evidentiary hearing, the bankruptcy court issued a memorandum decision ("Memorandum"). In the Memorandum, it determined that Claim #1 and Claim #24 were for spousal support. It also found Claim #24 to be a duplicate of Claim #1.

The bankruptcy court then analyzed Claim #21, finding it to be "a trumped-up affair cobbled together largely or entirely by Shannon calling her community property distribution rights a claim for money." Memorandum, 1:26, 2:1-2. It determined that Claim #21 included "about $180,000 in other claims, some of which

11

may have already been allowed and paid in Shannon's bankruptcy." Memorandum, 2:2-3. It concluded that "most that really remains is the ugly dispute between Michael and Shannon." Memorandum, 2:3-4.

The bankruptcy court explained that it was abstaining from adjudicating Claim #21 and Claim #24 under § 1334(c)(1) because it did not "deem it appropriate . . . to decide how marital property ought to be divided after creditors [were] paid." Memorandum, 2:8-9. It "[saw] no reason to hold up distributions to other creditors while Shannon and Michael play[ed] out their drama." Memorandum, 2:8. It estimated both Claim #21 and Claim #24 at zero for distribution purposes under § 502(c)(1) "without prejudice to all rights and defenses" in the dissolution proceeding.

The bankruptcy court lifted all stays against the dissolution proceeding. It provided that no order involving the disposition of Michael's bankruptcy estate assets could be enforced until his chapter 7 bankruptcy case was closed, without the chapter 7 trustee's consent or court order.

On the same day, the bankruptcy court entered an order consistent with its Memorandum. Shannon timely appealed the bankruptcy court's determination as to Claim #21 only.[16]

///

///

---

[16] Shannon notes in her opening brief that she only challenges the bankruptcy court's determination as to Claim #21, as Claim #24 is a duplicate of Claim #21. Appellant's Opening Brief at 16 n.2.

12

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 157(b)(2)(B) and 1334(b). We have jurisdiction under 28 U.S.C. § 158.[17]

**ISSUES**

1) Did the bankruptcy court err in applying § 502(c)(1) in estimating Claim #21?

2) Did the bankruptcy court err in estimating Claim #21 at zero for distribution purposes?

3) Did the bankruptcy court err in permissively abstaining from adjudicating Claim #21?

**STANDARDS OF REVIEW**

We review de novo a bankruptcy court's interpretation of the Bankruptcy Code. Meruelo Maddux Props.-760 S. Hill Street LLC v. Bank of Am., N.A. (In re Meruelo Maddux Props., Inc.), 667 F.3d 1072, 1076 (9th Cir. 2012). We review the bankruptcy court's factual findings for clear error. Id.

We review for abuse of discretion a bankruptcy court's decision to permissively abstain from adjudicating state law issues. Arizona Bankruptcy Petition Preparers, 307 B.R. at 140.

_____

[17] 28 U.S.C. § 1334(d) prohibits a court of appeal or the Supreme Court from reviewing a bankruptcy court's permissive or mandatory abstention decision. The statute does not apply to this Panel because we are a bankruptcy appellate panel under 28 U.S.C. § 158(c). See also In re Bankruptcy Petition Preparers Who Are Not Certified Pursuant to Requirements of the Arizona Supreme Court, 307 B.R. 134, 140, n.6 (9th Cir. BAP 2004) ("Arizona Bankruptcy Petition Preparers").

13

We apply the same standard of review to its estimation of claims under § 502(c)(1). See In re Corey, 892 F.2d 829, 834 (9th Cir. 1989)("A court has broad discretion when estimating the value of an unliquidated claim")(citation omitted); First City Beaumont v. Durkay (In re Ford), 967 F.2d 1047, 1049 n.3 (5th Cir. 1992) ("'Estimation' for the purposes of section 502(c)(1) simply means that the bankruptcy court may exercise its discretionary powers to determine the allowability of claims in bankruptcy in accordance with the principles of equity.").

We apply a two-part test to determine objectively whether the bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009)(en banc). First, we "determine de novo whether the bankruptcy court identified the correct legal rule to apply to the relief requested." Id. Second, we examine the bankruptcy court's factual findings under the clearly erroneous standard. Id. at 1262 & n.20. A bankruptcy court abuses its discretion if it applied the wrong legal standard or its factual findings were illogical, implausible or without support in the record. TrafficSchool.com v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

We may affirm on any ground supported by the record. Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008).

///
///
///
///
///
///

14

**DISCUSSION**

A. <u>Estimation of Claim #21 under § 502(c)</u>

    1.    Application of § 502(c)(1)[18]

Section 502(c)(1) establishes a procedure for the estimation of contingent or unliquidated claims against the bankruptcy estate, if the fixing or liquidation of such claims would unduly delay the administration of the bankruptcy estate. <u>Corey</u>, 892 F.2d at 834. "Estimation" simply means that the bankruptcy court may use its discretion in determining the allowability of claims in bankruptcy. <u>Ford</u>, 967 F.2d at 1049 n.3.

The Bankruptcy Code does not define the terms "contingent" or "unliquidated." <u>In re Nicholes</u>, 184 B.R. 82, 88 (9th Cir. BAP 1995). However, case law has set forth working definitions of the terms. A contingent claim is "one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor." <u>Siegel v. Fed. Home Loan Mortg. Corp.</u>, 143 F.3d 525, 532 (9th Cir. 1998)(quoting <u>Fostvedt v. Dow (In re Fostvedt)</u>, 823 F.2d 305, 306 (9th Cir. 1987)(internal quotation marks omitted)). In other words, a contingent claim is one that has not accrued and depends upon a future event. <u>In re Dill</u>, 30 B.R. 546, 548 (9th Cir. BAP 1983). An unliquidated claim is one that is not "subject to 'ready

---

[18] Section 502(c)(1) provides: "There shall be estimated for purpose of allowance under this section . . . any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case . . . ."

15

determination and precision in computation of the amount due.'" Fostvedt, 823 F.2d at 306 (quoting In re Sylvester, 19 B.R. 671, 673 (9th Cir. BAP 1982)).

Shannon argues that the bankruptcy court should not have attempted to estimate Claim #21 at all. She contends that the bankruptcy court erred in estimating Claim #21 under § 502(c)(1) because § 502(c)(1) did not apply, as Claim #21 was not contingent or unliquidated. Shannon asserts that she presented ample evidence demonstrating that Claim #21 already had accrued, triggering Michael's liability. We disagree.

Claim #21 was based on "support, property division, [and] undisclosed property."[19] As she points out, Shannon submitted numerous documents for the evidentiary hearing in support of Claim #21. Most of these documents pertain to the Community Property Assets and the distributions therefrom.

With respect to that portion of Claim #21 based on "support," Shannon submitted her declaration and a copy of the spousal support order as evidence. The declaration briefly refers to the spousal support order and calculates the total amount of spousal support in arrears at $11,724.90. The spousal support order states that Michael must pay $969 per month in spousal support, beginning on January 1, 2008.

Clearly, that portion of Claim #21 based on support is not

[19] The bankruptcy court noted in its Memorandum that Shannon had disputed this description of Claim #21, even though she herself had made it in her motion for entry of final decree in her chapter 11 bankruptcy case. The bankruptcy court found her description accurate.

16

contingent or unliquidated because the state court already determined Michael's liability under the spousal support order. (Although the total amount of spousal support due Shannon may be at issue.) But that portion of Claim #21 simply duplicates Claim #1, which the bankruptcy court already allowed.

As for the remainder of Claim #21 for "property division, [and] undisclosed property," we conclude that it is contingent and unliquidated. Shannon argues that Claim #21 is not contingent because "the elements of the claim" were "evident and easy to quantify." Appellant's Opening Brief at 22. She seems to imply that a contingent claim is one that is not easily ascertainable. But Shannon misapprehends the meaning of "contingent."

A contingent claim is one that has not yet arisen or developed. A claim is contingent if its existence depends on events outside of the bankruptcy case that give rise to the debtor's liability to the creditor. Here, looking at only the face sheet of Claim #21, Shannon bases it, in part, on "property division and undisclosed property." None of the documents she submitted at the evidentiary hearing show that a determination has been made dividing up the Community Property Assets between her and Michael. The documents also do not establish that Michael received the alleged amounts in distributions from the Community Property Assets. And no determination has been made as to Michael's liability for alleged "undisclosed property."

Shannon alleges that the Judgment and the Marital Trust Agreement require Michael to turn over the Community Property Assets and/or the distributions therefrom. The Marital Trust

17

Agreement simply transmuted various assets into community property and then placed them into the marital trust. It did not provide for turnover of these Community Property Assets and any distributions therefrom to Shannon.

As for the Judgment, it required Michael to turn over to Shannon the New York Partnership Interest Distributions. But Claim #21 does not indicate that it is based on the Judgment. It simply asserts that it is based on "support, property division, [and] undisclosed property" – none of which comprise the grounds for the Judgment. Also, the Judgment only required Michael to turn over the New York Partnership Interest Distributions, not the other Community Property Assets.

Moreover, as the bankruptcy court emphasized, Claim #21 involves non-bankruptcy law issues best left to determination by the state court. The division of community property assets is not within the bankruptcy court's purview.

Because Claim #21 is contingent and unliquidated, we determine that the bankruptcy court did not abuse its discretion in applying § 502(c)(1) to estimate Claim #21.

 2. Estimation of Claim #21 at zero for distribution
 purposes

"An estimation under section 502(c) may be for broad or narrow purposes." In re Pac. Gas & Elec. Co., 295 B.R. 635, 642 (Bankr. N.D. Cal. 2003). The bankruptcy court must follow "the substantive law governing the nature of the claim (such as following contract law when estimating a breach of contract claim)." Id. (citation omitted). "Otherwise, neither the

18

Bankruptcy Code nor the Bankruptcy Rules set forth a procedure for estimating claims; instead, the court may use 'whatever method is best suited to the particular contingencies at issue.'" Id. (quoting Bittner v. Borne Chem. Co., Inc., 691 F.2d 134, 135-36 (3d Cir. 1982)). The bankruptcy court therefore has broad discretion to determine the appropriate method of estimation. See id.

The bankruptcy court "only needs to reasonably estimate the probable value of the claim." Id. (quoting Matter of Fed. Press Co., 116 B.R. 650, 653 (Bankr. N.D. Ind. 1989)(internal quotation marks omitted)). "Such an estimate necessarily implies no certainty and is not a finding or fixing of an exact amount. It is merely the court's best estimate for the purpose of permitting the case to go forward . . . ." Id. (quoting Fed. Press Co., 116 B.R. at 653)(internal quotation marks omitted)).

Shannon argues that, even though she proffered sufficient evidence demonstrating the allowability of the entire amount of Claim #21, the bankruptcy court estimated it at zero. She further argues that the bankruptcy court provided no methodology or analysis for arriving at that amount.

Claim #21 was based on "support, property division, [and] undisclosed property." As we earlier explained, no determination had been made as to the division of property and as to the alleged undisclosed assets.[20] Aside from the Spousal Support Order, the state court had made no determinations relevant to

---

[20] Shannon describes these "undisclosed assets" as the distributions from the Community Property Assets that Michael failed to turn over to her.

19

Claim #21.

Because no determinations had been made on the bases for Claim #21, the bankruptcy court gave its best estimate – zero – in order to permit the bankruptcy case to move forward. Contrary to Shannon's assertion, the bankruptcy court did in fact explain its methodology: it estimated Claim #21 at zero because it believed it was inappropriate for it to decide how the Community Property Assets should be divided and saw no reason to hold up distributions to other creditors. The bankruptcy court exercised its broad discretion in estimating Claim #21. We see nothing in the record indicating that the bankruptcy court abused its discretion.

B.    Permissive abstention under 28 U.S.C. § 1334(c)(1)

"Section 1334(c)(1) provides for permissive abstention in both core and non-core proceedings." Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehouseman & Helpers, 124 F.3d 999, 1009 (9th Cir. 1997). A bankruptcy court should consider the following factors when deciding whether to abstain:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court

20

involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.), 912 F.2d 1162, 1166-67 (9th Cir. 1990)(quoting In re Republic Reader's Serv., Inc., 81 B.R. 422, 429 (Bankr. S.D. Tex. 1987) (internal quotation marks omitted)).

Shannon contends that the bankruptcy court erred in permissively abstaining from adjudicating Claim #21 because "deciding the merits of Claim No. 21" did not involve state law. Rather, Claim #21 involved a determination as to Michael's alleged failure to turn over Community Property Assets belonging to her bankruptcy estate.  Such a determination, she averred, involved the application of §§ 541(a)(2) and 542(a).[21]

_____

[21] Section 541(a) provides, in relevant part:

The commencement of a case under section 301, 302, or 303 of this title creates an estate.  Such an estate is comprised of all the following property, wherever located and by whomever held:
. . .
(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is –
    (A) under the sole, equal, or joint management and control of the debtor; or
    (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

Section 542(a) provides: Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of
(continued...)

21

We acknowledge that "[f]or purposes of § 541(a)(2), all community property not yet divided by a state court at the time of the bankruptcy filing is property of the bankruptcy estate." Dumas v. Mantle (In re Mantle), 153 F.3d 1082, 1085 (9th Cir. 1998). See also Keller v. Keller (In re Keller), 185 B.R. 796, 799-800 (9th Cir. BAP 1995)("When a bankruptcy petition is filed prior to the final disposition of property between divorcing spouses, the community property comes within the jurisdiction of the bankruptcy court to assure fairness to the creditors of the individual spouses and the marital estate."). However, we nonetheless conclude that the bankruptcy court did not abuse its discretion in abstaining from determining the division of the Community Property Assets.

As we mentioned earlier, one factor in favor of permissive abstention is the effect on the efficient administration of the bankruptcy estate. Here, the bankruptcy court based its decision to abstain on the fact that the creditors in Shannon's chapter 11 bankruptcy case already had been paid and there was "no reason to hold up distributions to other creditors" in Michael's chapter 7 bankruptcy case. Had the bankruptcy court decided to address the issues of community property division, Michael's chapter 7 bankruptcy case could have dragged on to the detriment of other creditors (e.g., litigation costs, possible depreciating value of certain Community Property Assets). Moreover, Shannon's

[21](...continued)
this title, shall deliver to the trustee, and account for such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

22

chapter 11 case was completed; all of her creditors (other than possibly Michael) had been paid, and her chapter 11 case was closed. There was no need to make any determinations on community property division when they would not have added any value or given any benefit to her chapter 11 bankruptcy estate. Further, the situation is confused because when Michael filed for chapter 7 bankruptcy, all of the Falks' Community Property Assets became property of his bankruptcy estate as well. There needs to be a division of the Community Property Assets to determine the allocation of those assets between the two battling ex-spouses – and that should be done by the state court. The bankruptcy court did not abuse its discretion in declining to inject itself into resolving the state law issues concerned in Michael and Shannon's personal marital dissolution disputes.

**CONCLUSION**

For the foregoing reasons, we AFFIRM.

23